IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | |
|---|---|
| United States Of America, *ex rel.* Lynn E. Szymoniak, <br><br> Relator, <br><br> vs. <br><br> American Home Mortgage Servicing, Inc.; Saxon Mortgage Services, Inc.; Lender Processing Services, Inc.; DocX, LLC; CitiMortgage, Inc., f/k/a Citi Residential Lending, Inc., f/k/a AMC Mortgage Services, Inc.; Wells Fargo Home Mortgage d/b/a America's Servicing Company, Bank of America Corporation, as successor-in-interest to LaSalle Bank; Bank Of New York Mellon Corporation; Citibank National Association; Deutsche Bank National Trust Company; Deutsche Bank Trust Company Americas; HSBC USA National Association; J.P. Morgan Chase Bank National Association; U.S. Bank National Association; and Wells Fargo Bank National Association, <br><br> Defendants. | C/A No. 0:10-cv-01465-JFA <br><br><br> **ORDER** |

This matter comes before the court upon the Defendants' joint[1] motion to dismiss the complaint[2] pursuant to FRCP 12(b)(1) in this *qui tam* action. The grounds for the motion are that the complaint is based upon public disclosures, and that Relator did not have direct and independent knowledge of the information in the complaint. For the reasons that follow, the court dismisses, *with prejudice*, allegations related to any false claim submitted to the United States, or one of the states, prior to March 23, 2010.

---

[1] *See* ECF No. 334, n. 1.
[2] All references to the complaint in this order refer to the third amended complaint filed at ECF No. 271.

### I.     INTRODUCTION

The conduct alleged in the complaint straddles the effective date of an amendment to the statute relevant to the public disclosure bar at issue.  *See* 31 U.S.C. 3730(e)(4).  The statute in effect at the time the underlying conduct occurred is controlling.  *Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 855 (1990) (Scalia, J., concurring) ("The principle that the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place has timeless and universal human appeal.").  The relevant amendment took effect on March 23, 2010, and under the amended statute, the United States may oppose the dismissal of a complaint pursuant to the public disclosure bar.  *See* 31 U.S.C. 3730(e)(4).  The United States filed its notice of opposition to dismissal on public disclosure grounds in this case the Saturday before a Monday hearing on the present motion.[3]  ECF No. 348.  Therefore, to the best of the court's knowledge,[4] the court cannot dismiss, on public disclosure grounds, any allegations related to false claims submitted after March 22, 2010.  Those claims will be the subject of an upcoming motion to dismiss pursuant to Rule 12(b)(6), or perhaps other challenges.

At the April 28, 2014 hearing, Relator's counsel alternated between conceding, not opposing, and voluntarily dismissing all false claims submitted prior to March 23, 2010 on the basis of the public disclosure bar.  Accordingly, the court heard little to no oral argument on whether the public disclosure bar applied to claims prior to March 23, 2010.  Relator did, however, ably and thoroughly brief the issue.  *See* ECF No. 321.  Ultimately, the court granted Defendants' Rule 12(b)(1) motion on public disclosure grounds, related to claims submitted to the United States prior to March 23, 2010, without opposition, and on the merits.  "If the merits

---

[3] Although the United States objects to the dismissal of allegations relating to claims for payment submitted after March 23, 2010, the court construes the United States' objection to mean on or after March 23, 2010.
[4] The court invited any motion or additional briefing challenging the validity of the Government's notice, but no such filing has been made.

are at issue, the mere fact that a motion to dismiss is unopposed does not relieve the district court of the obligation to examine the complaint itself." *Vega-Encarnacion v. Babilonia*, 344 F.3d 37, 41 (1st Cir. 2003). The court, therefore, offers its reasoning for dismissing all false claims submitted prior to March 23, 2010.

## II.     LEGAL STANDARD

In considering a motion to dismiss made pursuant to Fed. R. Civ. P. 12(b)(1), which attacks the viability of jurisdictionally significant allegations, the Court may probe into the record and is not required to accept all jurisdictional allegations by the nonmoving party as true, as it would in a motion made under Rule 12(b)(6) or a "facial" attack to jurisdiction under 12(b)(1). *See Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir.1982). Relator has the burden of establishing jurisdiction. *Id.*; *see also U.S. ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 348 (4th Cir.2009) (31 U.S.C. § 3730(e)(4) offers the "jurisdictional facts" which a relator has the burden of proving by a preponderance of the evidence to survive Defendants' Rule 12(b)(1) motion). In this case, this means that Relator bears "the burden of proving that the allegations underpinning [her] FCA claims were not 'based upon' [a public disclosure]." *Vuyyuru*, 555 F.3d at 348.

## III.    FACTS

In 2006, Relator refinanced the mortgage on her home, originally purchased in 1998, with a loan from Option One. Eventually, the mortgage was transferred to Soundview Home Loan Trust 2006-OPT2, a trust for which defendant Deutsche Bank National Trust Company served as trustee. Two years later, in July 2008, Relator defaulted on her loan and foreclosure proceedings were commenced against her. In the course of her defense of the foreclosure action, Relator investigated the documents that purported to transfer her mortgage to the Soundview Trust and came to believe that the mortgage assignment was a forgery. Relator contends that, after she discovered that the assignment documentation related to her foreclosure was false, she reviewed

3

public documents in other foreclosures that revealed a "widespread pattern and practice of forging documents." ECF No. 271, ¶ 82. According to Relator, in December 2009, she contacted an assistant U.S. attorney in Jacksonville, Florida, and also "began reporting her findings of widespread fabricated mortgage assignments" to government entities. *Id.* ¶¶ 99, 100.

On June 4, 2010, Relator filed this *qui tam* action on behalf of the United States. In the complaint, Relator names defendants who were the trustees or servicers of mortgage-backed securities ("MBS") trusts in which the United States had invested. According to Relator, Defendants had defrauded and harmed the United States because the MBS trusts, which held pools of residential mortgages, were missing assignments or included forged assignments. Relator alleges that the missing or forged assignments led to the submission of false claims in three ways: (1) Defendants used the falsified documents to recover FHA mortgage insurance; (2) Defendants charged the Government for the creation and filing of the falsified documents in FHA-insured foreclosures; and (3) Defendants submitted false claims to the investors of MBS Trusts, including the Government Plaintiffs, for services that were never rendered and for services and expenses related to the falsified documents used in foreclosures.

## IV.    ANALYSIS

Because the United States has opposed dismissal on public disclosure grounds for claims submitted after March 22, 2010, the only issue currently before the court with regard to the public disclosure bar is if allegedly false claims submitted to the United States prior to March 23, 2010, should be dismissed. The controlling statute—as it existed prior to March 23, 2010—reads as follows:

> (4)(A) No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news

4

> media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.
>
> (B) For purposes of this paragraph, "original source" means an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information.

31 U.S.C. § 3730(e)(4) (2009).  Therefore, the court is to determine if the Relator's knowledge in this action is based upon public disclosures, and, if so, whether the Relator possessed direct and independent knowledge of the information in the complaint, entitling the Relator to "original source" status.

### i.   *Relator's Complaint is Based Upon Qualifying Public Disclosures*

Under the relevant statute, the court looks for a public disclosure: "in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media."  31 U.S.C. § 3730(e)(4) (2009). "Under the [relevant] version of the statute, disclosures in federal *and* state trials and hearings qualify as public disclosures."  *U.S. ex rel. May v. Purdue Pharma L.P.*, 737 F.3d 908, 917 (4th Cir. 2013) (emphasis in original); *see also* 31 U.S.C. § 3730(e)(4) (2010) (Amended statute limits disclosures in trials and hearings to federal trials and hearings, creating the inference that the previous statute included state and federal trials and hearings.).  "Section 3730(e)(4)(A)'s public disclosure jurisdictional bar encompasses actions even *partly based upon* prior public disclosures."  *Vuyyuru*, 555 F.3d at 351 (emphasis added).  It is an unavoidable conclusion that the allegations in this lawsuit, first filed on June 4, 2010, are at least partly based upon, if not entirely based upon, qualifying public disclosures.  The court will not provide an exhaustive list

of each qualifying public disclosure, but will highlight a few of what it views as the most important public disclosures.[5]

First, there is Judge Schack's opinion suspecting "fraud … or at least malfeasance," related to one signatory of a mortgage assignment acting as both assignor and assignee. *Deutsche Bank Nat. Trust Co. v. Maraj*, 18 Misc. 3d 1123(A), 856 N.Y.S.2d 497 (N.Y. Sup. Ct. January 31, 2008).  Similarly, Judge Schack continued to reject foreclosure actions on the basis of faulty assignment documentation throughout 2008 and 2009.  *See, e.g., Indymac Bank, FSB v. Bethley*, No. 089615, 2009 WL 279304 (N.Y. Sup. Ct. Feb. 6, 2009); *HSBC Bank USA, Nat'l Ass'n v. Antrobus*, No. 07-43299, 2008 WL 2928553 (N.Y. Sup. Ct. July 31, 2008); *Wells Fargo Bank, N.A. v. Farmer*, No. 07-27296, 2008 WL 2309006 (N.Y. Sup. Ct. June 5, 2008); *Deutsche Bank Nat. Trust Co. v. Castellanos*, 18 Misc. 3d 1115(A), 856 N.Y.S.2d 497 (N.Y. Sup. Ct. 2008).

Next are the disclosures of widespread faulty mortgage assignment documentation by major national media outlets.  On April 24, 2009, *The New York Times* published an article about the recreation of documents used to foreclose on properties, and about how certain individuals showed several, different job titles on those documents.  Mike McIntire, *Murky Middleman*, N.Y. Times, Apr. 24, 2009, at B1.  On July 26, 2008, *The Wall Street Journal* published an article about judges rejecting foreclosures on the basis of flaws in assignment documentation.  Amir Efrati, *Some Judges Stiffen Foreclosure Standards*, Wall St. J., Jul. 26, 2008, at A3.  On May 3, 2009, *The St. Petersburg Times* published an article about a company whose employees signed documents as bank officers in "an assembly-line process designed to … [show that the new loan holders] owned the loan and had the right to foreclose."  Susan Taylor Martin, *So, Who Owns Your Home Loan?*, St. Petersburg Times, May 3, 2009, at 1D.

---

[5] For a more complete list of other relevant public disclosures, *see* ECF No. 294-1.

This *qui tam* is based upon the same activity just described in Judge Schack's opinions and the news media: missing mortgage assignments and widespread forgery of documents needed to foreclose. Finding these disclosures alone to be ample evidence that the allegations of the complaint are based upon—and certainly partly based upon—qualifying public disclosures, the court turns to whether or not Relator qualifies as an original source.

> ii.   *Relator does not have Direct and Independent Knowledge of the Information in the Complaint*

Under the relevant statute, a person qualifies as an original source if: (1) she has direct and independent knowledge of the information on which the allegations are based; *and* (2) has voluntarily provided the information to the Government before filing an action which is based on the information. 31 U.S.C. § 3730(e)(4) (2009). Here, Relator likely voluntarily provided the information to the United States prior to filing her complaint on June 4, 2010 when she contacted the U.S. Attorney's office in December 2009. However, the court finds that Relator does not have direct and independent knowledge of the information on which the allegations of this action are based, and, therefore, is not an original source.

It is clear that Relator's knowledge of the widespread, systematic problem of missing assignments and fabricated assignments came from the public domain, even if it is true that Relator discovered fraudulent documentation related to her own foreclosure. Relator did not work for any entity involved in the recreation of mortgage assignment documentation. She can point to no other relationship, fiduciary, or otherwise, to show that she is the type of insider or whistleblower that the False Claims Act is intended to reward. The knowledge she gained in her investigation is based almost entirely on public disclosures: court filings, SEC filings, and media coverage. Relator's knowledge of widespread fraud related to mortgage assignments—"the

information on which the allegations are based"—is best described as indirect and dependent on publicly available information.

Relator's actual contribution is a legal theory of how false claims were submitted to the government, due to Defendants' questionable conduct. As Relator describes in her brief in opposition to this motion:

> While it is true that Relator's Complaint alleges that Defendants falsified documents in a number of ways to unlawfully foreclose on mortgages, the gravamen of her Complaint is that the Defendants then used the falsified documents to recover FHA mortgage insurance to which they were not entitled, charged the Government for the creation and filing of the falsified documents in FHA-insured foreclosures, and submitted false claims to the investors of MBS Trusts, including the Government Plaintiffs, for services that were never rendered and for services and expenses related to the falsified documents used in foreclosures. It is these allegations and transactions – the very connecting the dots demonstrating injury to the Government – that Relator has brought to the table.

ECF No. 321, p. 32. The court finds that legal theories—"the very connecting the dots"—are not "knowledge of the information on which the allegations are based." An individual is considered an original source if she has direct and independent knowledge of the underlying *facts* that give rise to the complaint. *A-1 Ambulance Serv., Inc. v. California*, 202 F.3d 1238, 1245 (9th Cir. 2000) ("That the disclosed transactions themselves may not have pointed directly to any wrongdoing is simply of no moment."); *United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Prudential Ins. Co.*, 944 F.2d 1149, 1160 (3d Cir. 1991) ("[T]he relator must possess substantive information about the particular fraud, rather than merely background information which enables a putative relator to understand the significance of a publicly disclosed transaction or allegation."); *U.S. ex rel. Findley v. FPC-Boron Employees' Club*, 105 F.3d 675, 688 (D.C. Cir. 1997) *rev'd on other grounds by U.S. ex rel. Davis v. D.C.*, 679 F.3d 832, 835 (D.C. Cir. 2012) ("A relator's ability to recognize the legal consequences of a publicly disclosed fraudulent transaction does not alter the fact that the material elements of the violation

already have been publicly disclosed."); *U.S. ex rel. Barber v. Paychex, Inc.*, 09-20990-CIV, 2010 WL 2836333 (S.D. Fla. July 15, 2010) ("Settled law squarely holds that where, as here, the factual information underlying the claims is already available in the public domain, [relator's own legal interpretations and conclusions] make no difference to the application of the Public Disclosure Bar."). Indeed, the court believes it to generally be the province of lawyers and courts to create legal theories from a certain set of facts, not the province of *qui tam* relators.

Accordingly, the court finds that, as to false claims submitted prior to March 23, 2010, Relator's suit is barred because her knowledge of the underlying facts is based upon public disclosures and she is not an original source of the information.

## V.     CONCLUSION

For the reasons given, the court dismisses, against all Defendants and *with prejudice*, allegations related to any false claim submitted to the United States, or one of the States,[6] prior to March 23, 2010.

IT IS SO ORDERED.

May 12, 2014                                                    Joseph F. Anderson, Jr.
Columbia, South Carolina                              United States District Judge

---

[6] Having dismissed all federal claims related to false claims submitted prior to March 23, 2010, the court declines to exercise supplemental jurisdiction over the remaining state claims related to false claims submitted prior to March 23, 2010. *See* 28 U.S.C. § 1367.