IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| United States Of America,<br>*ex rel.* Lynn E. Szymoniak,<br><br>　　　　　　Plaintiffs,<br><br>vs.<br><br>American Home Mortgage Servicing, Inc.; Saxon Mortgage Services, Inc.; Lender Processing Services, Inc.; DocX, LLC; CitiMortgage, Inc., f/k/a Citi Residential Lending, Inc., AMC Mortgage Services, Inc.; Wells Fargo Home Mortgage d/b/a America's Servicing Company; Bank of America Corporation, as successor-in-interest to LaSalle Bank; Bank Of New York Mellon Corporation; Citibank National Association; Deutsche Bank National Trust Company; Deutsche Bank Trust Company Americas; HSBC USA National Association; J.P. Morgan Chase Bank National Association; U.S. Bank National Association; and Wells Fargo Bank National Association,<br><br>　　　　　　Defendants. | C/A No. 0:10-cv-01465-JFA<br><br><br><br><br><br>**ORDER** |

　　　　Lynn E. Szymoniak ("Relator") brings this *qui tam* action under the False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.*, on behalf of herself and the United States, seeking to recover damages and penalties from a group of defendants, comprised mostly of major banks operating throughout the United States, for creating and using fraudulent mortgage assignments and note endorsements. Unlike the paradigmatic FCA whistleblower, however, Relator is not a former or present employee who alleges that she uncovered fraud as an insider. Rather, Relator's lawsuit is the culmination of an investigation that she initiated to fight the foreclosure of her own home. According to Relator, her investigation uncovered discrepancies in the assignment of her

mortgage, which led her to review public documents in other foreclosures, revealing what she described as "a widespread pattern and practice of forging documents" that had "taint[ed] foreclosures nationwide."  Third Am. Compl. ¶¶ 57, 82, Feb. 3, 2014, ECF No. 271.  Before the court are nine defendants' motions to dismiss the complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1]  Relator opposes dismissal, and the court heard oral arguments for about four hours on May 28, 2014.  After the hearing, the court requested, and received, two more rounds of briefing.  Now, after careful consideration, the court grants the motions in part and denies them in part for the reasons set out below.

## I.  FACTUAL BACKGROUND

Relator filed this action on June 4, 2010, naming 15 defendants who were trustees or servicers of mortgage-backed securities ("MBS") trusts in which the United States had invested.  The FCA permits a private person (a "relator") to sue for alleged fraud on the government.  31 U.S.C. § 3730(b).  In her original complaint,[2] Relator alleged that these MBS trusts lacked the assignments, or included forged assignments, of the notes and residential mortgages that formed the asset pools of the trusts.  Relator alleged that the defendants had defrauded the United States because they had "falsely represented that they held good title to the MBS assets" and had sold impaired securities to government-funded entities; they had "received millions of dollars in U.S. government funds to provide services involving fraudulent mortgage assignments"; and they had

---

[1] Defendants are Homeward Residential, f/k/a American Home Mortgage Servicing; Saxon Mortgage Services; Lender Processing Services; DocX; Bank Of New York Mellon Corp.; Deutsche Bank National Trust Co.; Deutsche Bank Trust Co. Americas; HSBC USA National Association; and U.S. Bank National Association.  At the hearing on May 28, 2014, the court dismissed without prejudice Bank of America Corp.; CitiMortgage; Citibank National Association; Wells Fargo Bank National Association; Wells Fargo Home Mortgage d/b/a America's Servicing Company; and JP Morgan Chase Bank National Association, after Relator, with the government's consent, voluntarily dismissed those defendants, under Rule 41(a)(1)(A)(i) of the Federal Rules of Civil Procedure and 31 U.S.C. § 3730(b)(1).  *See* ECF No. 362.

[2] Relator has amended the complaint three times, with the third amendment filed February 3, 2014.

created "fraudulent legal documentation to conceal that the trust was missing title to the assets, thus impairing the value of the securities sold" to government entities, in violation of sections 3729(a)(1)(A), 3729(a)(1)(B), and 3729(a)(1)(C) of the FCA. Compl. ¶¶ 209, 216, 222, June 4, 2010, ECF No. 1.

Pursuant to the FCA, the complaint was filed under a 60-day seal to afford the United States an opportunity to decide whether to intervene in the action. The United States then requested, and received from this court, a total of eight deadline extensions. During this time, Relator amended her complaint twice, asserting the same allegations but adding sections 3729(a)(1)(D) and 3729(a)(1)(G) of the FCA and adding claims on behalf of several states under their respective FCAs.[3] ECF Nos. 24, 35. While the action was still under seal, Plaintiff also achieved a partial settlement with six defendants. ECF Nos. 82, 84. Finally, after the eighth extension, and when the action had been pending for three years and two months, the court indicated that it would grant no further extensions, whereupon the United States announced on August 1, 2013, that it would not intervene. The court unsealed the case and directed Relator to serve the complaint on the defendants.

On February 3, 2014, Relator filed a 207-page, third amended complaint. ECF No. 271. In the third amendment, Plaintiff alleged that the defendants defrauded and harmed the United States and state governments because the missing or forged assignments of notes and mortgages led to the submission of false claims in three ways, two of which were new to this complaint:

---

[3] In her motion for leave to file a second amended complaint, Relator stated: "The amendment merely describes in greater detail the nature of the damages suffered by the United States as a result of defendants' alleged conduct. It does not change the allegations relating to the underlying conduct itself. . . . [T]he amendment provides defendants with greater information regarding the damages to which they are exposed." Rel.'s Mot. for Leave to Am. Compl. 4, ECF No. 32. The court granted the motion and a second amended complaint was filed May 13, 2011. ECF No. 35.

First, Relator alleged, as in earlier versions of the complaint, that the defendants submitted false claims to the investors of the MBS trusts, including the federal and state governments, for services never rendered and for services and expenses related to the falsified documents used in foreclosures, in violation of sections 3729(a)(1)(A), 3729(a)(1)(B), 3729(a)(1)(C), 3729(a)(1)(D), and 3729(a)(1)(G) of the FCA.

Second, Relator alleged, for the first time, that the defendants violated the FCA by submitting false claims to the U.S. Department of Housing and Urban Development ("HUD") for payments under the mortgage insurance program administered by the Federal Housing Administration ("FHA"). Third, Relator alleged, for the first time, that the defendants improperly charged the government for filing falsified documents in FHA-insured foreclosures.[4]

In response, all of the defendants moved to dismiss the action under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, arguing that Relator's claims and allegations were jurisdictionally barred because they were disclosed publicly before the commencement of this action and Relator did not qualify as an "original source," as required by section 3730(e)(4) of the FCA; and that Relator had failed to meet the pleading standards of Rule 9(b) of the Federal

---

[4] Like with the claims related to MBS trusts, Relator sought to recover, on behalf of the United States, damages and civil penalties from the defendants for (1) knowingly presenting or causing to be presented false or fraudulent claims for payment or approval from the government entity, including HUD, that paid the mortgage guarantee claim, pursuant to 31 U.S.C. § 3729(a)(1)(A); (2) knowingly making, using or causing to be made or used, false records or statements material to false or fraudulent claims to the government entity, including HUD, that paid the mortgage guarantee claim, pursuant to 31 U.S.C. § 3729(a)(1)(B); (3) having possession, custody, or control of property or money used, or to be used, by the government, and knowingly delivering, or causing to be delivered, less than all of that money or property, pursuant to 31 U.S.C. § 3729(a)(1)(D); (4) knowingly making, using, or causing to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the government entity, or knowingly concealing or knowingly and improperly avoiding or decreasing an obligation to pay or transmit money or property to the government entity, pursuant to pursuant to 31 U.S.C. § 3729(a)(1)(G); and (5) conspiring to commit a violation of sections 3729(a)(1)(A), 3729(a)(1)(B), 3729(a)(1)(D), 3729(a)(1)(G) of the FCA, pursuant to 31 U.S.C. § 3729(a)(1)(C).

Rules of Civil Procedure. Complicating the motions was the fact that section 3730 of the FCA was amended while some of the conduct at issue in this litigation occurred.

Once the motions were fully briefed, the court scheduled a hearing for April 28, 2014. To promote judicial economy, however, the court decided that it would bifurcate the oral arguments, hearing only the Rule 12(b)(1) motions to dismiss on that date, and hearing the Rule 12(b)(6) motions later if needed. ECF No. 347.

Two days before the scheduled hearing, on April 26, 2014, the United States, having earlier elected not to intervene in the case, notified the court of an objection. In its notice, the United States objected, pursuant to section 3730(e)(4)(A) of the FCA, to the dismissal on public disclosure grounds of any allegations in Relator's complaint relating to claims for payment submitted after March 22, 2010.[5] ECF No. 348. This objection removed from the court's consideration the public disclosure defense as it related to claims for payment submitted on or after March 23, 2010.

Then, at the beginning of the hearing on April 28, 2014, Relator announced that she consented to the dismissal with prejudice of all claims that arose before March 23, 2010, under the previous version of section 3730. Thus, the court heard little to no arguments on the public disclosure bar of the FCA, 31 U.S.C. § 3730(e)(4).[6] Instead, the court set aside May 28, 2014, to

---

[5] An amended section 3730 of the FCA took effect on March 23, 2010, giving the United States a right to oppose the dismissal of a complaint on the basis of the public disclosure bar. Although the United States objected to the dismissal of allegations relating to claims for payment submitted *after* March 23, 2010, the court construed the objection to mean *on or after* March 23, 2010.

[6] Without opposition, the court granted, on public disclosure grounds, the defendants' Rule 12(b)(1) motions as to claims submitted to the United States before March 23, 2010. The court also set out its reasoning in a written order on May 12, 2014, dismissing on the merits and on public disclosure grounds all allegations related to false claims submitted to the United States before March 23, 2010. ECF No. 359. Having dismissed with prejudice all federal claims related to alleged submissions before March 23, 2010, the court declined to exercise supplemental

hear the defendants' Rule 12(b)(6) motions relating to claims for payment submitted on or after March 23, 2010, the only claims remaining in the action.

Before the court heard the Rule 12(b)(6) motions, however, Relator further narrowed the scope of the court's inquiry.  On May 16, 2014, Relator filed two notices of voluntary dismissal pursuant to Rule 41(a)(1)(A)(i) of the Federal Rules of Civil Procedure.  ECF Nos. 362–63.  In one notice, Relator sought to dismiss voluntarily all claims against six defendants, Bank of America Corp.; CitiMortgage; Citibank National Association; Wells Fargo Bank National Association; Wells Fargo Home Mortgage, d/b/a America's Servicing Company; and JP Morgan Chase Bank National Association.  ECF No. 362.  In another notice, Relator sought to dismiss voluntarily all "claims relating to the Government's acquisition and holding of mortgage-backed securities [MBS]."  ECF No. 363.  After obtaining the United States' consent, as required by section 3730(b)(1) of the FCA, the court dismissed without prejudice those six defendants, as well as the MBS claims, at the hearing on May 28, 2014.

The voluntary dismissal removed from this case all but nine defendants: Homeward Residential, f/k/a American Home Mortgage Servicing; Saxon Mortgage Services; Lender Processing Services; DocX; Bank Of New York Mellon Corp.; Deutsche Bank National Trust Company; Deutsche Bank Trust Company Americas; HSBC USA National Association; and U.S. Bank National Association (collectively "Defendants").  Additionally, the voluntary dismissal left only Relator's allegations related to claims for mortgage insurance submitted to HUD after March 22, 2010.  These remaining claims now are before the court.

---

jurisdiction over any allegations related to false claims submitted before March 23, 2010, in violation of the states' FCAs.  *Id.*  To the extent that the order entered May 12, 2014, stated anything different about the claims brought under the states' FCAs, this order hereby clarifies that earlier order, thus granting ECF No. 396.

## II.  ANALYSIS AND APPLICATION

Defendants move to dismiss Relator's complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, implicating the pleading requirements for civil actions under Rule 8 of the Federal Rules of Civil Procedure, as well as the heightened standard for fraud under Rule 9(b) of the Federal Rules of Civil Procedure.

### A.  Standard of Review

When a court considers Rule 12(b)(6) motions to dismiss, the pleading standards in Rule 8 guide whether a complaint states a claim for relief, providing that the complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of these requirements is to provide defendants with "fair notice" of claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 n. 3 (2007). In assessing the pleadings, a court must accept as true the facts alleged in the complaint and view them in a light most favorable to the plaintiff. *Ostrzenski v. Seigel*, 177 F.3d 245, 251 (4th Cir. 1999). However, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," a pleading that merely offers "labels and conclusions," or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Thus, a plaintiff must put forth claims that cross "the line from conceivable to plausible." *Id.* at 570.

A complaint brought under the FCA sounds in fraud. As such, it is also "subject to Federal Rule of Civil Procedure 9(b), which requires that claimants plead fraud with particularity." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783–84 (4th Cir. 1999). The Fourth Circuit Court of Appeals has held that Rule 9(b) has four purposes:

> First, the rule ensures that the defendant has sufficient information to formulate a defense by putting it on notice of the conduct complained of. . . . Second, Rule 9(b) exists to protect defendants from frivolous suits. A third reason for the rule is to eliminate fraud actions in which all the facts are learned after discovery. Finally, Rule 9(b) protects defendants from harm to their goodwill and reputation.

*Harrison*, 176 F.3d at 784 (internal citations omitted) (alteration in original).

Rule 9(b) provides that a party who alleges fraud or mistake "must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Under the rule, a plaintiff who asserts claims of fraud "must, at a minimum, describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *United States ex rel. Owens v. First Kuwaiti Gen'l Trading & Contracting Co.*, 612 F.3d 724, 731 (4th Cir. 2010) (internal citation and quotation marks omitted); *see also Harrison*, 176 F.3d at 784. This means "Rule 9(b) requires plaintiffs to plead the who, what, when, where, and how: the first paragraph of any newspaper story." *Crest Constr. II, Inc. v. Doe*, 660 F.3d 346, 353 (8th Cir. 2011) (internal citation and quotation marks omitted).

A court "should hesitate to dismiss a complaint under Rule 9(b)" if satisfied, first, that the defendants have "been made aware of the particular circumstances" for which they will have to prepare a defense at trial, and, second, that the plaintiff "has substantial prediscovery evidence of those facts." *Harrison*, 176 F.3d at 784. However, the "clear intent of Rule 9(b) is to eliminate fraud actions in which all the facts are learned through discovery after the complaint is filed."

8

*Id.* at 789 (internal citations and quotation marks omitted); *see United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 380 (4th Cir. 2008) ("[I]f allowed to go forward, Relators' FCA claim would have to rest primarily on facts learned through the costly process of discovery. This is precisely what Rule 9(b) seeks to prevent.").

### B. False Claims Act

The FCA permits a private person, a relator, to file a civil action, called a *qui tam*, against, and recover damages on behalf of the United States from, any person who:

> (A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;
>
> (B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;
>
> (C) conspires to commit a violation of [sections] (A), (B), (D), (E), (F), or (G);
>
> (D) has possession, custody, or control of property or money used, or to be used, by the Government and knowingly delivers, or causes to be delivered, less than all of that money or property; [or]
> . . .
> (G) knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government . . .

31 U.S.C. § 3729(a)(1) (A)–(G).

### C. Pleadings on Relator's HUD related claims

Defendants argue that this court should dismiss the third amended complaint because Relator fails to allege sufficiently how specific assignments or other documents were false or fraudulent and because she fails to connect any allegedly false or fraudulent documents to claims submitted to HUD. These shortcomings, they contend, do not meet the pleading requirements of Rule 9(b). Relator counters that her allegations are sufficient to withstand dismissal.

9

The Fourth Circuit's decision in *United States ex rel. Nathan v. Takeda Pharmaceuticals North America, Inc.*, 707 F.3d 451 (4th Cir. 2013) *petition for cert. denied*, 134 S.Ct. 1759 (2014), provides the relevant Rule 9(b) pleading standard for cases brought under the FCA. *Id.* at 456. In *Nathan*, the Fourth Circuit affirmed the district court's dismissal of a complaint in which a relator had alleged FCA violations in a scheme to promote a prescription drug for off-label use. *Id.* at 453–54, 460 ("In the absence of the required specific allegations, a court is unable to infer that a Medicare patient who has received a prescription for an off-label use actually filled the prescription and sought reimbursement from the government."). In affirming the dismissal, the *Nathan* Court rejected the relator's argument "that allegations of a fraudulent scheme, in the absence of an assertion that a specific false claim was presented to the government for payment," was a sufficient for Rule 9(b), and noted that, under the FCA, "the critical question is whether the defendant caused a false claim to be presented to the government, because liability under the Act attaches only to a claim actually presented to the government for payment, not to the underlying fraudulent scheme." *Id.* at 456. "Therefore, when a relator fails to plead plausible allegations of presentment, the relator has not alleged all the elements of a claim under the Act." *Id.* (citing *United States ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301 (11th Cir. 2002).

In synthesizing the pleading standard for FCA claims, the Fourth Circuit concluded: "[W]hen a defendant's actions, as alleged and as reasonably inferred from the allegations, *could* have led, but *need not necessarily* have led, to the submission of false claims, a relator must allege with particularity that specific false claims actually were presented to the government for payment." *Id.* at 457 (emphasis in original).

In her complaint, treated as true for purposes of the 12(b)(6) motions, Relator alleges that her investigation into her own foreclosure led to the discovery of mortgage documents used in other foreclosures across the country that, among other things, were backdated, had false dates of transfer, were fraudulently notarized, had forged signatures, and were signed by employees of servicers or document preparers who claimed to be officers of other entities. Third Am. Compl. ¶ 2, Feb. 3, 2014, ECF No. 271. These fraudulent assignments and note endorsements, Relator alleges, formed the basis for the submission of false claims to HUD after March 22, 2010, in two ways. First, Relator alleges that false claims for mortgage insurance were submitted to HUD for payments pursuant to the FHA mortgage insurance program. Second, Relator alleges that Defendants charged HUD for the costs of preparing fraudulent documents or filing improper mortgage assignments. The court looks at those in turn.

1.     **Seeking mortgage insurance payments from HUD**

In fourteen paragraphs at the end of the 781-paragraph complaint, Relator lays out her HUD-related allegations; describes the HUD and the FHA mortgage insurance program; and outlines findings of the HUD's Inspector General's investigation of five banks against which she is not pursuing claims related to FHA insurance. Specifically, in the paragraphs devoted to the allegations of false claims for mortgage insurance submitted to HUD, Relator provides that:

> 431. The Defendants also used the false assignments and/or related documents described above in Section VI[7] in connection with foreclosures of properties that became the subject of applications to HUD for payments pursuant to the mortgage insurance program administered by the FHA. By submitting claims based on false documentation to the federal government for the purpose of obtaining payment on mortgage guarantees, Defendants violated the False Claims Act, 31 U.S.C. 3729(a)(1)(A) and (B).

---

[7] In section VI of the complaint, labeled "Defendants' Acts Violate False Claims Act," Relator lays out allegations on surrogate signing and how the defendants "created mortgage-backed securities that lacked lawful assignments and other documents of the mortgages underlying." *Id.* ¶ 129.

11

> 432. HUD's Lender Insurance Program provides insurance to approved lenders as an incentive to give FHA loans to qualifying borrowers. When an FHA-insured loan defaults, HUD will pay the mortgage holder the balance of the loan and assume ownership and possession of the property, which it then proceeds to resell. In order to make a claim, the claimant must certify the loss to HUD by submitting valid documents evidencing that the claimant holds the mortgage and has the right to recover on the note.
>
> 433. FHA is the largest mortgage insurer in the world, insuring approximately one-third of all new residential mortgages in the United States. . . . For example, when Moody's Investors Service rated the certificates issued by Structured Asset Securities Corporation, Series 2005-RF4, an MBS Trust, it noted that about 80% of the mortgage loans in the pool were insured by the FHA.
>
> 434. The prospectuses filed for the MBS Trusts contain information about FHA-insurance and its effect on the trust. For example, the prospectus and prospectus supplement filed for the HSI Asset Securitization Corporation Trust 2007-OPT1, an MBS Trust, explains that insurance claims, and specifically "FHA Insurance," are deposited as trust proceeds. While "HUD has the option, in most cases, to pay insurance claims in cash or in debentures …[,] [c]urrently, claims are being paid in cash, and claims have not been paid in debentures since 1965." Furthermore, the insurable loss is also significant since "these loans are insured up to an amount equal to 90% of the sum of the unpaid principal of the FHA loan."
>
> 435. The conduct described in Section VI . . . has resulted in the submission of tens of thousands of false claims by the Defendants in connection with the FHA insurance program. In fact, subsequent to the filing of the original complaints in this action in 2010, and prompted at least in part by the Relators allegations in those complaints, HUD's Inspector General conducted an investigation and issued five memoranda of review detailing its findings with respect to five banks. These memoranda provide some quantification of the number of claims potentially at issue here. . . .

Third Am. Compl. ¶¶ 431–35, Feb. 3, 2014, ECF No. 271 (footnotes added) (second alteration in original). Relator alleges that "[l]iability on the HUD claim extends not only to the Defendants who submitted false claims to HUD but also to the Defendants who were involved in creating the false documents underlying the submissions." *Id.* ¶ 443.

Drawing all inferences in favor of Relator, her complaint still fails. Although section VI of the complaint alleges an elaborate scheme of surrogate signing and the manufacturing of

fraudulent mortgage assignments, notes, and note endorsements in the context of MBS trusts,[8] Relator does not provide facts to show that this scheme actually resulted in the submission of specific false claims to HUD for payments pursuant to the FHA mortgage insurance program; nor does she provide facts for a reasonable inference that false claims *necessarily* were submitted to HUD for payments under the program. Thus, like in *Nathan*, Relator alleges an underlying fraudulent scheme but fails to provide the next link for FCA liability to attach—that Defendants submitted false claims to HUD for payments.

Throughout litigation, Relator has asserted a variety of arguments in an attempt to show a necessary connection between fraudulent conduct and false claims. In her response to Defendants' motions to dismiss, Relator contends that the complaint fulfills the four purposes of Rule 9(b) established in *Harrison*, 176 F.3d at 784. In particular, Relator submits that the complaint contains specific allegations to meet the notice requirement. "Here, each Defendant has been put on notice of its wrongful conduct and has sufficient information to prepare a defense. That is all Rule 9(b) requires." Rel.'s Resp. to Mots. to Dismiss 47, ECF No. 321. Furthermore, Relator argues that, in cases involving extensive schemes of fraud, courts have eased the pleading requirements of Rule 9(b). Relator suggests that, "it simply is not plausible that the costs of preparing the thousands of fraudulent documents she identified as having been used with respect to MBS Trusts and HUD foreclosures were not charged to the trusts or HUD." *Id.* at 45. To this end, the complaint contains the paragraph that describes the FHA as the largest mortgage insurer in the world, insuring about one-third of all new residential mortgages in the United States, presumably to show the likelihood of MBS trusts holding FHA-insured loans and the likelihood of those loans becoming the source of a submission to HUD.

---

[8] Although Relator is no longer pursuing relief based on false claims submitted before March 23, 2010, the court considers her allegations as to other events occurring before that date.

The court is not persuaded. For one, the underlying facts of the cases that Relator cites do not corroborate her arguments. For instance, in the FCA case that Relator relies upon to argue that she has met the *Harrison* notice requirement, the district court concluded that the complaint satisfied Rule 9(b) although it described neither which defendant submitted the particular claims, nor when the claims were submitted. *See United States v. Gwinn*, No. 5:06-CV-00267, 2008 WL 867927, at *11 (S.D. W.Va. Mar. 31, 2008). The district court found that the allegations put the defendants on notice of the particular circumstances for which they would have to prepare a defense. *Id.* at *12. However, unlike in this case, the five defendants in *Gwinn* all were individuals within one company. *Id.* at *1. Also, unlike in this case, the court found that the complaint satisfied Rule 9(b) because it contained specific allegations against all of the defendants, individually, and described the scheme to defraud, "including the methods used, paperwork falsified, and the locations targeted." *Id.* at *11. Furthermore, unlike here, the court in *Gwinn* found that an exhibit to the complaint provided about 1,900 examples of the actual false claims submitted, with information about the date of service for the alleged false claim, the amount claimed, and the homes where the items at issue were delivered. *Id.* To further undermine the applicability of *Gwinn*, which Relator also cites in support of easing the pleading requirements in cases involving extensive schemes of fraud, the district court in *Gwinn* rejected the focus on "particularity" in *Clausen*, 290 F.3d at 1311–12, which is the Eleventh Circuit opinion that the Fourth Circuit later cites with approval in *Nathan*, 707 F.3d at 456–57. *Id.* at *11–12. Additionally, the other FCA cases that Relator cites in support of easing the pleading requirements for fraud in some circumstances also are different from the case at hand in critical respects[9]: While those courts found that Rule 9(b) had been satisfied, they also either concluded

---

[9] In support of easing the pleading requirements, Relator also cites *In re Pharmaceutical Industry*

14

that the case involved multiple defendants within one entity, or that the relator had set out in some detail the methods that the defendants used to submit the false claims, neither of which is present in this case.

Ultimately, in contrast to Relator's assertions, the complaint presents precisely the type of allegations that the *Nathan* Court sought to avoid. In *Nathan*, the Fourth Circuit concluded that "allegations of a *fraudulent scheme*, in the absence of an assertion that a specific false claim was presented to the government for payment" was not enough for an FCA claim under Rule 9(b). *Nathan*, 707 F.3d at 456 (emphasis added). "As the Supreme Court has cautioned, the [FCA] 'was not designed to punish every type of fraud committed upon the government.'" *Id.* (quoting *Harrison*, 176 F.3d at 785). Rule 9(b) does not permit a relator "'merely to describe a private scheme in detail but then to allege simply and without any stated reason for his belief that claims requesting illegal payments must have been submitted, were likely submitted or should have been submitted to the Government.'" *Id.* at 456–57 (quoting *Clausen*, 290 F.3d at 1311). "Rather, Rule 9(b) requires that 'some indicia of reliability' must be provided in the complaint to support the allegation that an actual false claim was presented to the government." *Id.* at 457.

Here, Relator has failed to identify a single HUD claim for insurance that actually was submitted pursuant to the allegedly fraudulent scheme outlined in the complaint. Therefore, like in *Nathan*, Relator attempts to make a statistical argument as to why false claims for payment necessarily must have been submitted. However, like in *Nathan*, Relator only summarily concludes that the use of false or fraudulent assignments became the subject of applications to

---

*Average Wholesale Price Litigation*, 307 F. Supp. 2d 196 (D. Mass. 2004); *United States ex rel. Harris v. Bernad*, 275 F. Supp. 2d 1 (D. D.C. 2003); *United States ex rel. Pogue v. Diabetes Treatment Centers of America, Inc.*, 238 F. Supp. 2d 258 (D. D.C. 2002); *United States ex rel. Johnson v. Shell Oil Co.*, 183 F.R.D. 204 (E.D. Tex. 1998). Among those, *Harris*, *Pogue*, and *Johnson* were *qui tams* brought under the FCA.

HUD for payments pursuant to the FHA mortgage insurance program. While the court finds that Relator has made Defendants aware of circumstances of the alleged underlying scheme involving assignment documents, and has pre-discovery evidence of those facts, the same is not true for the HUD-related allegations. Missing from the complaint are facts describing loans guaranteed by the government, which MBS trusts contained these loans, and, importantly, any indication of methods by which any of these loans were submitted to HUD for the purpose of obtaining illegal payments on mortgage guarantees, so as to subject Defendants to liability under sections 3729(a)(1)(A) and 3729(a)(1)(B) of the FCA.[10] In this court's view, these deficiencies in the complaint fall short of both the four purposes of Rule 9(b) as outlined in *Harrison* and the pleading standards established by *Nathan*. Because the clear intent of Rule 9(b) is to eliminate fraud actions in which the FCA claims would have to rest primarily on facts learned through discovery, Relator's arguments that her allegations are sufficient to withstand dismissal fail.[11]

---

[10] When pressed by the court, both sides agreed that there are seven situations in which HUD steps in to make good on a loss that occurred on an FHA-insured loan. One of those ways involves a traditional foreclosure sale. In a foreclosure sale, based upon this court's knowledge of South Carolina practices, the mortgaged property is conveyed—sometimes to a third party, and sometimes to the foreclosing bank, whomever is the highest bidder—after a hearing, notice of sale, and public auction. In those situations, any deficiencies in the assignment process must be raised before the foreclosure judge because they relate to the foreclosing bank's standing to bring the foreclosure action. Any standing issues not raised and addressed by the foreclosure judge are waived insofar as they might relate to the foreclosure buyer's ability to gain good title to the property. The foreclosing bank then turns to HUD for reimbursement of any loss that might have occurred, measured by the amount of the debt as compared to the sales price. At that point, deficiencies in the assignment process are of no consequence. Relator argues that, notwithstanding this, six more ways exist in which HUD may be required to pay a foreclosing bank who comes into possession of mortgage property worth less than the amount of the outstanding loan. However, none of those ways are pleaded in the complaint.

[11] The court notes that Defendants quite possibly engaged in commercial transactions in all fifty states. In at least one of those states—New York—"an assignment of a note and mortgage need not be in writing and can be effectuated by physical delivery." *Bank of New York v. Silverberg*, 86 A.D.3d 274, 280 (N.Y. App. Div. 2011). Thus, any irregularities in the assignment procedures would be of no consequence in that jurisdiction. In other states, just the opposite may be true.

16

Thus, this court rejects Relator's invitation to infer that, because she has alleged a fraudulent scheme involving assignment documents, that any false claims requesting mortgage-insurance payments from HUD were a necessary result of Defendants' allegedly fraudulent conduct. Accordingly, the court dismisses the allegations that false claims for insurance were submitted to HUD after March 22, 2010, for payments pursuant to the FHA mortgage insurance program.

### 2.     Charging HUD for costs of filing assignments

Relator also argues that Defendants improperly charged HUD for the cost of filing with the courts fraudulent documents. According to the complaint, "[i]n addition to basing claims for insurance payments on false documentation, Defendants have also improperly charged HUD for the costs of filing the improper mortgage assignments." Third Am. Compl. ¶ 438, Feb. 3, 2014, ECF No. 271. As examples of these allegedly improper filings, Relator lists three transactions:

> 439. For example, FHA Case No. 093-6036744 involves a September 13, 2006, mortgage on a property purchased by Niurka de la Rosa. Defendant U.S. BANK brought a foreclosure action in Florida state court on January 26, 2009, but an assignment of the mortgage to U.S. Bank was not executed until February 11, 2009. The assignment from MERS to U.S. BANK was signed on behalf of MERS by Gregg W. Speer, who purported to be a Vice President of MERS but who, on information and belief, was actually employed by U.S. BANK. On July 1, 2010, a judgment of foreclosure was entered by the court, and the judgment included a charge of $18.50 representing the recording fee for filing the assignment of the mortgage. This amount for filing the false and untimely assignment was thereafter improperly passed on to HUD as part of the insurance claim.
>
> 440. Similarly, FHA Case No. 093-6369462-703 involves a May 22, 2008, mortgage on a property purchased by Ralph A. Della Pia and Donna M. Della Pia. Defendant U.S. BANK brought a foreclosure action in Florida state court on March 30, 2009, but an assignment of the mortgage to U.S. BANK was not executed until April 8, 2009. The assignment from MERS to U.S. BANK was signed on behalf of MERS by Lori Edwards, who purported to be a Vice President of MERS but who, on information and belief, was actually employed by U.S. BANK. On November 19, 2010, a judgment of foreclosure was entered by the court, and the judgment included a charge of 10.00 representing the recording fee for filing the assignment of the mortgage. This amount for filing the false and

> untimely assignment was thereafter improperly passed on to HUD as part of the insurance claim.
>
> 441. FHA Case No. 093-6018655-734 involves a July 19, 2006, mortgage on a property purchased by Ana Herron. Defendant U.S. BANK brought a foreclosure action in Florida state court on December 13, 2007, but an assignment of the mortgage to U.S. BANK was not executed until December 26, 2007. The assignment from MERS to U.S. BANK was signed on behalf of MERS by Speer, who again purported to be a Vice President of MERS but who, on information and belief, was actually employed by U.S. BANK. On February 18, 2009, a judgment of foreclosure was entered by the court, and the judgment included a charge of 10.00 representing the recording fee for filing the assignment of the mortgage. This amount for filing the false and untimely assignment was thereafter improperly passed on to HUD as part of the insurance claim.

*Id.* ¶¶ 439–41. In conclusion, Relator submits that "[t]he foregoing examples are set forth for illustrative purposes. Thousands of claims for payment on FHA insurance were submitted by Defendants, and . . . Relator asserts claims against every Defendant for submitting, or causing to be submitted, false claims to HUD relating to insurance payments." *Id.* ¶ 444.

In light of the standards set out above, the court finds that the three examples fulfill the purposes of Rule 9(b) and the *Nathan* pleading standards with respect to allegations that Defendant U.S. Bank National Association, after March 22, 2010, improperly charged HUD for the cost of filing with the courts fraudulent documents. The examples identify the specific property; the FHA claim number, which means it was guaranteed by the government; the assignment; who signed the assignment; the amount of the filing fee; and they allege that the filing fees were charged to HUD. Combined with the complaint's pleadings on an underlying fraudulent scheme, these examples create plausible allegations of the submissions of false claims to the government for purposes of Rule 12(b)(6).

As with the allegations about false claims for mortgage insurance, however, Relator's claims fail against all other Defendants under Rule 9(b). Beyond conclusory statements, the

complaint contains no assertions that the other Defendants submitted specific claims to the government for payment of these filing fees.  At the hearing on May 28, 2014, counsel for Relator argued that the allegations against the other Defendants nevertheless satisfy the pleading standards, reminding the court that the complaint alleges that FHA insurance covers one-third of the market.  "[T]he complaint alleges, albeit in a generalized fashion, that they all did the same thing."  Hr'g Tr., 67:19–67:20, May 28, 2014, ECF No. 375.  Also, "there's a sufficient basis for believing that this was a pervasive practice throughout the industry to charge for this filing fee, that they all did it. . . . [T]he idea that one bank did it and no one else did it, it seems . . . implausible."  *Id.* at 68:12–68:17.  As to the lack of specific claims, counsel for Relator stated, "we are in the process of obtaining from HUD . . . more HUD claims with respect to the other defendants. We expect to have them over the course of the next few months."  *Id.* at 68:7–68:10.

The court already has concluded that the complaint does not include sufficient pleadings to infer that the allegedly fraudulent scheme involving assignments resulted in false claims being submitted to HUD, and that one of the purposes of Rule 9(b) is to prevent cases from relying primarily on facts unveiled in discovery.  Now, the court also declines to lump all Defendants together under a "pervasive practice throughout the industry" standard for purposes of satisfying Rule 9(b).  Thus, the court dismisses the claims alleging that the other Defendants, after March 22, 2010, improperly charged HUD for the cost of filing with the courts fraudulent documents.

### III. CONCLUSION

Accordingly, the court hereby grants the 12(b)(6) motions filed by Defendants Homeward Residential, f/k/a American Home Mortgage Servicing; Saxon Mortgage Services; Lender Processing Services; DocX; Bank Of New York Mellon Corp.; Deutsche Bank National Trust Company; Deutsche Bank Trust Company Americas; and HSBC USA National

Association, and the court dismisses with prejudice to Relator and to the United States[12] all remaining FCA claims against those eight Defendants.

The court grants in part and denies in part the 12(b)(6) motion filed by Defendant U.S. Bank National Association. Specifically, the court grants the motion as to FCA claims related to false claims for payment of mortgage insurance submitted to HUD after March 22, 2010, and dismisses those claims with prejudice to Relator and to the United States. The court denies the motion as to FCA claims that Defendant U.S. Bank National Association, after March 22, 2010, improperly charged HUD for the cost of filing with the courts fraudulent documents. Defendant U.S. Bank National Association shall file an answer within the time limits prescribed by the Federal Rules of Civil Procedure, after which the court will issue a scheduling order.

As in its ruling on alleged submissions before March 23, 2010, the court declines to exercise supplemental jurisdiction over any allegations related to false claims submitted after March 22, 2010, brought under the states' FCAs.

IT IS SO ORDERED.

*Joseph F. Anderson, Jr.*

July 25, 2014
Columbia, South Carolina

Joseph F. Anderson, Jr.
United States District Judge

---

[12] Considering this case first was filed more than four years ago and remained under seal for more than three years, during which time the United States conducted an extensive investigation, engaged in settlement negotiations over some of the claims, and, ultimately, declined to intervene, the court is convinced that Rule 12(b)(6) dismissal in this action must be with prejudice to Relator *and* to the United States. *See United States ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 853 (7th Cir. 2009) (In *United States ex rel. Eisenstein v. City of New York, New York,* 129 S.Ct. 2230 (2009), the Supreme Court "stated that 'the United States is bound by the judgment in all FCA actions regardless of its participation in the case.' 129 S.Ct. at 2236. That the United States is bound is why it is a real party in interest. If [the relator] had litigated a *qui tam* action to the gills and lost, neither another relator nor the United States could start afresh.").