# EXHIBIT A

## (Unpublished Cases)

2011 WL 5827786
Only the Westlaw citation is currently available.
United States District Court,
D. South Carolina,
Charleston Division.

ASHLEY II OF CHARLESTON, L.L.C., Plaintiff,
v.
PCS NITROGEN, INC.,
Defendant/Third–Party Plaintiff,
v.
Ross Development Corporation; Koninklijke DSM
N.V.; DSM Chemicals of North America, Inc.;
James H. Holcombe; J. Holcombe Enterprises,
L.P.; J. Henry Fair, Jr.; Allwaste Tank Cleaning,
Inc.; Robin Hood Container Express; and the
City of Charleston, Third–Party Defendants.

Civil Action No. 2:05–2782–
MBS.    |    Nov. 17, 2011.

**Attorneys and Law Firms**

Thomas N. Barefoot, Thomas N. Barefoot Law Office, Bethesda, MD, Christy Ford Allen, John Allen Massalon, Wills Massalon and Allen, Charleston, SC, for Plaintiff.

Carmen G. McLean, John Buchanan Williams, Kevin P. Holewinski, William G. Laxton, Jr., Michael Howard Ginsberg, Jones Day, Sandra Kaczmarczyk, Alton Associates, Washington, DC, William Howell Morrison, Haynsworth Sinkler Boyd, Charleston, SC, for Defendants.

### ORDER AND OPINION

MARGARET B. SEYMOUR, District Judge.

**\*1** On August 8, 2011, PCS Nitrogen, Inc. ("PCS") filed a motion under Federal Rule of Civil Procedure 54(b) requesting entry of final judgment as to Counts I and II of the complaint brought by Ashley II of Charleston, L.L.C. ("Ashley") against PCS. ECF No. 659. On August 25, 2011, Ashley filed an opposition in response, arguing that final judgment should be entered as to all claims except for PCS's pending claim against Ross Development Corporation ("Ross") for contractual indemnification. ECF No. 661. PCS filed a reply on September 6, 2011. ECF No. 662.

### BACKGROUND

On July 16, 2008, Ashley filed an amended complaint against PCS seeking a declaration of joint and several liability under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") § 107 for environmental response costs at the Columbia Nitrogen Site in Charleston, South Carolina. ECF No. 209. Ashley also sought damages based on past response costs. *Id.* On August 4, 2008, PCS filed an amended answer and counterclaim. ECF No. 226. PCS asserted contribution claims under CERCLA § 113(f) against Ashley; Ross; Koninklijke DSM N.V. and DSM Chemicals of North America, Inc. (collectively "the DSM Parties"); James H. Holcombe; J. Holcombe Enterprises, L.P.; J. Henry Fair, Jr.; Allwaste Tank Cleaning; Robin Hood Container Express, Inc. ("RHCE"); and the City of Charleston, South Carolina, alleging that they are potentially responsible parties. *Id.* PCS also asserted a claim against Ross for indemnification based on contract. *Id.* Many of the third-party defendants filed counterclaims against PCS and cross-claims against other third-party defendants, seeking contribution under CERCLA § 113. ECF No. 228, 231, 234 & 239.

On May 27, 2011, this Court issued an order holding that the harm at the Columbia Nitrogen Site is indivisible, that PCS is jointly and severally liable for the harm, and that PCS is liable to Ashley for response costs pursuant to CERCLA § 107(a)(2). ECF No. 627 at 121. The Court directed entry of judgment for Ashley in the amount of $147,617.02 plus interest against PCS and declared that PCS would be liable to Ashley for 76% of future response costs. *Id.* The Court also directed entry of judgment for PCS in the amount of $87,404.82 plus interest against Ross and in the amount of $1,942.32 plus interest against RHCE. *Id.* The Court declared that Ross would be liable to PCS for 45% of future response costs, and that RHCE would be liable to PCS for 1% of future response costs. *Id.* Finally, the Court declared that PCS is entitled to reimbursement from Ross pursuant to the indemnification contract. *Id.*

### LEGAL STANDARD

"When an action presents more than one claim for relief ... or multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay."Fed.R.Civ.P. 54(b). To certify

2011 WL 5827786

claims for appeal under Rule 54(b), the "district court must first determine that it is dealing with a 'final judgment,' " that is, "an ultimate disposition of an individual claim entered in the course of a multiple claims action." *Curtiss–Wright Corp. v. General Elec. Co.,* 446 U.S. 1, 7, 100 S.Ct. 1460, 64 L.Ed.2d 1 (1980) (quotation omitted). The court must also determine that "there is no just reason for the delay in the entry of judgment." *Braswell Shipyards, Inc. v. Beazer East, Inc. .,* 2 F.3d 1331, 1335 (4th Cir.1993). In making the latter determination, the court should consider:

  **\*2** (1) the relationship between the adjudicated and unadjudicated claims;

(2) the possibility that the need for review might or might not be mooted by future developments in the district court;

(3) the possibility that the reviewing court might be obliged to consider the same issue a second time;

(4) the presence or absence of a claim or counterclaim which could result in a setoff against the judgment sought to be made final;

(5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like.

*Id.* at 1335–36.If the court finds certification under Rule 54(b) to be appropriate it "should state [its] findings on the record or in its order" because "[t]he expression of clear and cogent findings of fact is crucial."*Id.* at 1336.


### DISCUSSION

The Court has ruled on all the CERCLA claims in the present action—Ashley's primary § 107 claim against PCS and the § 113 contribution claims asserted by PCS and the third-party defendants. Remaining for disposition is PCS's claim against Ross for indemnity based on a contractual agreement. The parties move the court to determine whether there is "no just reason for delay [ing]" the entry of final judgment as to one or more of the claims that have been resolved.

Ross argues that all CERCLA claims should be certified for appeal. Examining this suggestion in light of the five *Braswell* factors, the Court finds that the fully adjudicated CERCLA claims have only a tenuous relationship to the unadjudicated contract claim between PCS and Ross. The CERCLA claims involve the apportionment of liability

for over one hundred years of pollution among various successive landowners according to CERCLA's statutory scheme. However, the remaining claim deals only with the interpretation of a contract between two private parties. Moreover, the need for the Fourth Circuit to review this Court's adjudication of the CERCLA claims will not be mooted by any possible developments in the contract claim. Although the contract claim may affect Ross's liability to PCS, it will not remove the need for the appellate court to review the determination of PCS's primary liability to Ashley and the allocation of CERCLA liability among the various landowners. Furthermore, because the CERCLA claims involve issues distinct from the contract claim, there is no possibility that the Fourth Circuit will be required to consider the same issues a second time; any subsequent appeal of the contract claim would not raise issues under CERCLA.

The remaining contract claim between PCS and Ross would not result in a set-off against the judgment under the CERCLA claims. Ross has been found to be liable to PCS for a portion of PCS's environmental response costs. Although PCS seeks further recovery from Ross based on an indemnity contract, the resolution of this claim could increase, but not decrease, Ross's liability to PCS. Finally, the miscellaneous factors likewise counsel in favor of certifying the CERCLA claims for appeal while the contract claim remains pending in this Court. PCS is currently involved in related litigation against Ross and its directors and shareholders in this Court. PCS seeks damages arising from its losses due to the litigation costs and judgment in the present case. Any further damages awarded to PCS under its contract with Ross will necessarily implicate this related litigation and may lead to delay in the resolution of the contract claim. There is no just reason to deny the numerous other parties to the CERCLA claims an opportunity to pursue a timely appeal while PCS and Ross resolve an essentially private dispute. Accordingly, this Court finds certification of all CERCLA claims to be appropriate under Rule 54(b).

  **\*3** PCS argues that only Ashley's CERCLA § 107 claims against PCS should be certified for appeal, and that the numerous CERCLA § 113 contribution claims between PCS and the third-party defendants should not be certified at the present time. PCS contends that Ashley's claims "are separable from the other claims in this case," which "concern issues other than Section 107 liability to Ashley."ECF No. 659 at 2. PCS emphasizes that most of the remaining claims "are viable *only if* PCS is liable to Ashley under Section 107,"

2011 WL 5827786

and that "[i]f the Court of Appeals determines that PCS is *not* liable to Ashley, most of the other claims and outstanding issues in the case could be rendered moot."*Id.* PCS argues that "[a]n appeal limited to [Ashley's claims] would be efficient and would avoid the complex morass of other issues and other parties involved in the Section 113 claims."ECF No. 662 at 2.

As explained above, there is no just reason to delay the appeal of the fully resolved CERCLA claims while PCS and Ross continue to litigate a private contractual dispute. Nevertheless, PCS urges the Court to withhold certification of some CERCLA claims for the sole purpose of creating an "efficient" appellate package. The Court does not find this to be appropriate under Rule 54(b).

### CONCLUSION

Because the Court finds that all CERCLA claims have reached final judgment and that there is no just reason to delay the appeal of these claims, the Court certifies all such claims for appeal under Federal Rule of Civil Procedure 54(b). The only remaining claim is PCS's contractual claim for indemnity against Ross.

**IT IS ORDERED.**

---

**End of Document**

© 2014 Thomson Reuters. No claim to original U.S. Government Works.

10 F.3d 806
Unpublished Disposition
NOTICE: THIS IS AN UNPUBLISHED OPINION.
(The Court's decision is referenced in a "Table of
Decisions Without Reported Opinions" appearing
in the Federal Reporter. See CTA4 Rule 32.1.
United States Court of Appeals,
Fourth Circuit.

M. G. BROOKS, Jr.; Harold Causby; Sam H.
Decker; Ned M. Fowler; Athos Rostan, Jr.,
Executor of the Estate of Athos Rostan, Sr.,
deceased; Jane R. McBryde, Executor of the
Estate of Athos Rostan, Sr., deceased; John
H. Shell; W. Alex Willis, *Plaintiffs-Appellees,*

v.

Ernest Earl OWENSBY; Earl Owensby Corporation,
d/b/a E. O. Corp.; Earl Owensby Studios, Inc., a
North Carolina Corporation; Earl Owensby Studios,
Inc., a Utah Corporation, *Defendants-Appellants.*

No. 92-1602.    |    Submitted: September
29, 1993.    |    Decided: November 23, 1993.

Appeal from the United States District Court for the Western
District of North Carolina, at Charlotte.

**Attorneys and Law Firms**

Ernest Earl Owensby, Appellant Pro Se.

A. Ward McKeithen, Melissa Lamb Saunders, ROBINSON,
BRADSHAW & HINSON, P.A., for Appellees.

W.D.N.C.

DISMISSED.

Before HAMILTON and MURNAGHAN, Circuit Judges,
and BUTZNER, Senior Circuit Judge.

PER CURIAM:

**OPINION**

**\*1** Appellants appeal from the district court's order granting
Appellees' motions for entry of judgment, or in the alternative,
granting a new trial on certain issues. We dismiss the appeal
for lack of jurisdiction because the order is not appealable.
This Court may exercise jurisdiction only over final orders, 28
U.S.C. § 1291 (1988), and certain interlocutory and collateral
orders, 28 U.S.C.§ 1292 (1988); Fed. R. Civ. P. 54(b); *Cohen
v. Beneficial Industrial Loan Corp.,* 337 U.S. 541 (1949). We
find that the order here appealed from falls within none of the
above categories of appealable orders.

We find that the district court improperly certified this appeal
pursuant to Fed. R. Civ. P. 54(b). The district court failed
to offer any reasons for the Rule 54(b) certification.*See
Braswell Shipyards, Inc. v. Beazer East, Inc.,*-F.2d-, No.
92-1476 (4th Cir. Aug. 23, 1993); *Speigel v. Trustees of
Tufts College,* 843 F.2d 38, 43 (1st Cir. 1988). Moreover,
the district court failed to consider that judicial, economic,
and other resources would best be served by this Court
reviewing an appeal from all issues in this case at one
time, rather than in piecemeal fashion.*See Allis-Chalmers
Corp. v. Philadelphia Elec. Co.,* 521 F.2d 360, 364 (3d
Cir. 1975). Because Rule 54(b) certification is warranted
only in exceptional cases, *Braswell,* slip op. at 6, we hold
that the district court abused its discretion in certifying this
appeal. Accordingly, we dismiss the appeal as interlocutory.
We dispense with oral argument because the facts and legal
contentions are adequately presented in the materials before
the Court and argument would not aid the decisional process.

*DISMISSED*

**Parallel Citations**

1993 WL 483135 (C.A.4 (N.C.))

---

WestlawNext © 2014 Thomson Reuters. No claim to original U.S. Government Works.                1

Cason v. South Carolina State Ports Authority, Not Reported in F.Supp.2d (2013)

2013 WL 1826447

2013 WL 1826447
Only the Westlaw citation is currently available.
United States District Court,
D. South Carolina,
Charleston Division.

Toby CASON, Jr. and Robert L. Stewart, Plaintiffs,
v.
SOUTH CAROLINA STATE PORTS AUTHORITY,
James I. Newsome, II, Stephen E. Connor,
Lorinda Rinaldi, and James Young, all in their
official and individual capacities, Defendants.

Civil Action No. 2:11–2241–
DCN–BM.    |    April 3, 2013.

**Attorneys and Law Firms**

Anne E. Mjaatvedt, Anne Mjaatvedt Law Firm, Charleston, SC, Armand Georges Derfner, Derfner Altman And Wilborn, Charleston, SC, for Plaintiffs.

Eric C. Schweitzer, Lucille L. Nelson, Ogletree Deakins Nash Smoak and Stewart, Charleston, SC, Wilbur Eugene Johnson, Young Clement Rivers and Tisdale, Charleston, SC, for Defendants.

## REPORT AND RECOMMENDATION

BRISTOW MARCHANT, United States Magistrate Judge.

*1 This action has been filed by the Plaintiffs, both former employees of the Defendant South Carolina State Ports Authority (SPA), asserting various claims of discrimination. On March 22, 2012, the Defendants filed a motion to dismiss Plaintiffs' Second and Third Causes of Action, and by Order filed October 9, 2012, Defendants' motion was granted. Additionally, since Plaintiffs' Third Cause of Action was the only claim asserted against the natural Defendants Newsome, Connor, Rinaldi, and Young, these individuals were all dismissed as party Defendants in this case. *See* Order, Court Docket No. 72.

On February 25, 2013, Plaintiffs filed a motion for an entry of final judgment with respect to Plaintiffs' claims in their Third Cause of Action, pursuant to Rule 54(b) Fed.R.Civ.P. Plaintiffs seek this relief so that they can immediately appeal the Court's ruling dismissing their Third Cause of Action. Defendants filed a memorandum in opposition to

the Plaintiffs' motion on March 14, 2013, following which Plaintiffs filed a reply memorandum on March 25, 2013. Plaintiffs' motion is now before the Court for disposition. [1]

### Background

Plaintiffs were both employed as lieutenants with the SPA Police Department. Both Plaintiffs were suspended from their jobs on November 3, 2009, and were subsequently terminated on December 7, 2009. After their terminations, the SPA submitted a "Notification of Separation Due to Misconduct" concerning each Plaintiff to the Criminal Justice Academy on or about December 15, 2009.

Plaintiffs allege that the State of South Carolina has established and maintains a comprehensive system of licensing for law enforcement officers employed by, or considered for employment by, the State and its subdivisions, and that a central feature of this system is certification of law enforcement officers by the South Carolina Law Enforcement Training Counsel, to be carried out through the Criminal Justice Academy. Plaintiffs further allege that, by law, no state agency or subdivision of the State of South Carolina may employ any person to carry out law enforcement duties without certification by the Criminal Justice Academy, which certification includes a determination that the candidate is a person of good character. Plaintiffs allege that a certified law enforcement officer keeps his certification as long as he remains employed by the same agency, but that if he leaves that agency, his certification becomes dormant until he seeks or obtains a law enforcement job with another South Carolina agency, at which point the process of re-certification, or his ability to obtain re-certification, depends on the separating agency's report to the Criminal Justice Academy.

Plaintiffs allege that the separating agency must report a certified law enforcement officer's separation on one of two forms used by the Criminal Justice Academy; ordinary separations (which can include violations of agency policy) are reported on a form entitled "Notification of Administrative/Routine Separation", but if the separating agency said the separation was for "misconduct", the report is on a form entitled "Notification of Separation Due to Misconduct" and results in withdrawal of certification. Plaintiffs allege that in the case of an "Administrative/Routine Separation", re-certification is routine when the person is considered or hired for a law enforcement job by another agency, but that in the case of a "misconduct"

2013 WL 1826447

separation, the person cannot be recertified without a formal investigation by the Criminal Justice Academy. Until a person is recertified, that person cannot be hired by another law enforcement agency. Plaintiffs allege that state law also provides additional authority to the Director of the Law Enforcement Training Counsel to refuse to certify persons reported for misconduct.

**\*2** Plaintiffs allege that by virtue of the foregoing provisions of law and procedure, a law enforcement officer who separates from an agency without a designation of "misconduct" is easily re-employable by other agencies as a law enforcement officer, while a law enforcement officer who separates from an agency with a designation of "misconduct" is essentially unemployable in law enforcement because his designation is not in good standing and he has been stripped of the opportunity to have a certificate reissued. Further, Plaintiffs allege that the separating agency's designation of "misconduct" and that agency's descriptions of the circumstances of separation is made available to any future prospective law enforcement employers, and both Plaintiffs allege that "on information and belief" they have been refused consideration for other law enforcement jobs because of the prospective employer's awareness of the "misconduct" designation.

In their Third Cause of Action, Plaintiffs asserted claims against the named natural Defendants for alleged "due process violations" under 42 U.S.C. § 1983. Plaintiffs due process claim is based on alleged violations by the named natural Defendants of their constitutionally protected "property" and "liberty" interests. Specifically, Plaintiffs alleged in their second Amended Complaint that by submitting the "Notification of Separation due to Misconduct" to the Criminal Justice Academy, the Defendants 1) deprived them of "liberty" by placing a stigma on Plaintiffs' reputations which has been and will continue to be disseminated to the relevant public; that is, prospective law enforcement employers; and 2) deprived them of "property" by withholding from them a certificate of good standing, which prevents them from obtaining any other job in law enforcement. Plaintiffs alleged that both of these actions were taken without providing Plaintiffs with due process of law. *See generally,* Second Amended Complaint, ¶¶ 47–68.[2]

Section 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief".*City of Monterey v. Del Monte Dues at Monterey, Ltd.,* 526 U.S. 687, 707, 119 S.Ct. 1624, 143 L.Ed.2d 882 (1999). However, §

1983" 'is not itself a source of substantive rights,' but merely provides 'a method of vindicating federal rights elsewhere conferred.'"*Albright v. Oliver,* 510 U.S. 266, 271, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994), "quoting *Baker v. McCollan,* 443 U.S. 137, 144, n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). Therefore, while the natural Defendants named in the Complaint, as state employees, are all subject to suit under § 1983, this claim could only proceed if Plaintiffs sets forth a viable due process claim.*Albright,* 510 U.S. at 271. In their motion to dismiss, Defendants asserted, inter alia, that they were entitled to dismissal of this cause of action because Plaintiffs failed to set forth a cognizable liberty or property claim in the allegations of the Second Amended Complaint. The Court agreed, and dismissed this cause of action, as well as the named natural Defendants, who had been sued under this cause of action. Plaintiffs seek to have the Court's ruling with respect to this cause of action certified as a "final judgment" under Rule 54(b) so that they can immediately appeal this ruling to the Fourth Circuit Court of Appeals.

### *Discussion*

**\*3** Rule 54(b) provides that when an action presents more than one claim for relief (as in the case at bar) the Court may direct entry of a final judgment as to one or more of the claims if the Court expressly determines that there is no reason for delay. Otherwise, any order adjudicating fewer than all of the claims in the case does not end the action as to any of the claims or parties, and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities. When deciding whether to grant a Rule 54(b) motion, the Court must first determine whether it is dealing with a "final judgment"; that is, "an ultimate disposition of the individual claim entered in the course of a multiple claims action", and then make a finding as to whether "there is no just reason for the delay in the entry of judgment".*Ashley II of Charleston, LLC v. PCS Nitrogen, Inc.,* No. 05–2782, 2011 WL 5827786, \* 1 (D.S.C. Nov.17, 2011) (internal citations and quotations omitted). There is no dispute that the first criterium (that the Court is dealing with a "final judgment") is met in this case.

With respect to the second criterium, in order to determine whether there is no just reason for the delay in the entry of judgment, the Court is to consider: 1) the relationship between the adjudicated and unadjudicated claims; 2) the possibility that the need for review might or might not be mooted by future developments in the District Court; 3) the possibility

that the reviewing Court might be obliged to consider the same issue a second time; 4) the presence or absence of a claim or counterclaim which could result in a set off against the judgment sought to be made final; and 5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like. *Id.,* citing to *Braswell Shipyards, Inc. v. Beazer East, Inc.,* 2 F.3d 1331, 1335–1336 (4th Cir.1993). Further, in considering whether to grant such a motion, the Court should keep in mind that it is the movant who bears the burden of demonstrating that relief is warranted, and that certification of judgments pursuant to Rule 54(b) are (at least in the Fourth Circuit) "disfavored".*Braswell Shipyards,* 2 F.3d at 1335; *Bell Microproducts, Inc. v. Global–Insync, Inc.,* 20 F.Supp.2d 938, 942 (E.D.Va.1998); cf. *Clark v. Baka,* 593 F.3d 712, 714–715 (8th Cir.2010) [Finding that such interlocutory appeals are "generally disfavored", and that "it is only the special case that warrants an immediate appeal from a partial resolution of an lawsuit."(Internal citations omitted) ]; see *Morrison–Knudsen Co. v. Archer,* 655 F.2d 962, 965 (9th Cir.1981) ["Judgments under Rule 54(b) must be reserved for the unusual case in which the costs and risks of multiplying the number of proceedings and overcrowding the appellate docket are outbalanced by pressing needs of the litigants for an early and separate judgment as to some claims or parties"], cited in *Braswell Shipyards,* 2 F.3d at 1335.

**\*4** In support of certification of a final judgment on their Third Cause of Action, Plaintiffs argue that the liberty and due process claims at issue in their Third Cause of Action are separate and distinct from the Title VII claims remaining to be litigated in the case at bar, and involve different Defendants, facts, legal issues, and relief sought. However, a plain reading of the claims set forth in Plaintiffs' Third Cause of Action shows that they are not separate and distinct from the other claims being asserted. Plaintiffs' First and Fourth Causes of Action (both asserted against the Defendant SPA under Title VII) allege that one or more of the named natural Defendants improperly suspended and then terminated their employment, not because Plaintiffs had actually engaged in any misconduct or actions which justified their discipline or dismissal, but because of race discrimination (both Plaintiffs are African American) and unlawful retaliation. In their Third Cause of Action, Plaintiffs allege that these purportedly improper and unlawful actions allegedly deprived them of "liberty" by placing a stigma on their reputations which has been and will continue to be disseminated to the relevant public (through

the "Notification of Separation Due to Misconduct" sent by the Defendants to the Criminal Justice Academy as part of their unlawful actions), and deprived them of "property" by withholding from them a certificate of good standing (due to the notification they sent to the Criminal Justice Academy), thereby preventing them from obtaining any other job in law enforcement.

Hence, the allegedly unlawful and improper actions of these Defendants, the underlying merits of which are still being litigated against the SPA in Plaintiffs' remaining causes of action, provide the basis for Plaintiffs' claims against the natural Defendants in the dismissed Third Cause of Action. [3] That the underlying factual allegations supporting Plaintiffs' claims are so intertwined also raises the possibility that the need for review might or might not be mooted by future developments in the case in this Court (for example, if summary judgment were to be granted on Plaintiffs' Title VII causes of action). Cf. *Lowery v. Federal Exp. Corp.,* 426 F.3d 817, 821 (6th Cir.2005) ["This court has held that "[e]ven though different theories of liability may have been asserted, the concept of a 'claim' under Rule 54(b) denotes 'the aggregate operative facts which give rise to a right enforceable in the courts .' "] (quoting *McIntyre v. First Nat'l Bank of Cincinnati,* 585 F.2d 190, 192 (6th Cir.1978)); *Stewart v. Gales,* 277 F.R.D. 33 (D.D.C.2011) [Denying individual Defendants' motion under 54(b) ]. In the alternative, if Plaintiff appealed the grant of summary judgment, the Appellate Court might be obliged to consider the same issue Plaintiff seeks to raise now a second time. Finally, as Defendants point out, Plaintiffs are also pursuing separate litigation in state court against these same Defendants for defamation and interference with contractual relations based on these same underlying allegations. *See Defendants' Exhibit* (Court Docket No. 97–1).

**\*5** Plaintiffs will be able to fully brief an appeal of any final adverse decisions rendered at the close of this case. Therefore, they have failed to meet their burden of showing that certification for appeal is warranted at this time based on the relevant standards and factors to be considered in determining a Rule 54(b) motion. *Braswell Shipyards,* 2 F.3d at 1355 [Rule 54(b) certification is the exception rather than the norm, and should not be granted routinely or as an accommodation to counsel]. Plaintiffs' motion should be **denied.**

**Cason v. South Carolina State Ports Authority, Not Reported in F.Supp.2d (2013)**

2013 WL 1826447

Footnotes

1    Although the merits of Plaintiffs' Third Cause of Action have already been ruled upon, the undersigned construes Plaintiffs' current
     motion as a dispositive motion. Therefore, a Report and Recommendation is being entered for review by the Court.

2    Plaintiffs set forth how the grievance procedure they were provided allegedly failed to provide them with due process in the Second
     Amended Complaint, at ¶ ¶ 69–85.

3    Plaintiffs' Third Cause of Action was dismissed by the Court because they did not have a constitutionally protected property interest
     in their employment for purposes of asserting such a claim, while the submission by the Defendants of the misconduct report to
     the Criminal Justice Academy did not constitute a deprivation of a liberty interest. See *Newton v. South Carolina Department of
     Public Safety,* et al., No. 10–1781, 2011 WL 4435761, at * 3 (D.S.C. Sept.23, 2011) ["At-will employment is not a property interest
     for purposes of the due process clause"]; Bell *v. Town of Port Royal, South Carolina,* 586 F.Supp.2d 498, 514–521 (D.S.C.2008)
     [Holding that such disclosures made to the Academy are not "public" disclosures for purposes of a liberty claim].

---

**End of Document**                                          © 2014 Thomson Reuters. No claim to original U.S. Government Works.

Kyle v. Coleman, 67 Fed.Appx. 781 (2003)

2003 WL 21246656

67 Fed.Appx. 781

This case was not selected for publication in the Federal Reporter.

Not for Publication in West's Federal Reporter See Fed. Rule of Appellate Procedure 32.1 generally governing citation of judicial decisions issued on or after Jan. 1, 2007. See also Fourth Circuit Rule 32.1 (Find CTA4 Rule 32.1)

United States Court of Appeals,
Fourth Circuit.

Forrest Ray KYLE, Petitioner-Appellant,

v.

Mike COLEMAN, Warden, Mount Olive Correctional Complex, Respondent-Appellee.

No. 02-7830.    |    Submitted April 8, 2003.    |    Decided May 30, 2003.

After petitioner's conviction was affirmed on direct appeal, petitioner filed for federal habeas relief. The United States District Court for the Northern District of West Virginia, Robert E. Maxell, J., denied petition in part, and certified the judgment for interlocutory appeal. Petitioner appealed. The Court of Appeals held that Court of Appeals lacked jurisdiction to hear interlocutory appeal.

Dismissed.

**\*781** Appeal from the United States District Court for the Northern District of West Virginia, at Elkins. Robert E. Maxwell, Senior District Judge. (CA-02-10-2).

**Attorneys and Law Firms**

**\*782** Paul Raymond Stone, Jr., Charleston, West Virginia; Richard M. Gutmann, Morgantown, West Virginia, for Appellant. Darrell V. McGraw, Jr., Dawn Ellen Warfield, John Rufus Blevins, Office of the Attorney General of West Virginia, Charleston, West Virginia, for Appellee.

Before LUTTIG, MICHAEL, and MOTZ, Circuit Judges.

Dismissed by unpublished PER CURIAM opinion.

Footnotes

**OPINION**

PER CURIAM.

**\*\*1** Forrest Kyle appeals from the district court's order accepting the magistrate judge's recommendation to deny relief on Claims 1, 2, 3, 7, and 9 in his petition filed under 28 U.S.C. § 2254 (2000). The district court certified the order for interlocutory appeal pursuant to Fed.R.Civ.P. 54(b). Although neither party has challenged the district court's certification of this appeal under Rule 54(b), we must consider sua sponte the issue of whether the district court's entry of final judgment was warranted because it involves the scope of our jurisdiction. \* *Braswell Shipyards, Inc. v. Beazer East, Inc.,* 2 F.3d 1331, 1336 (4th Cir.1993). We dismiss the appeal for lack of jurisdiction.

Certification pursuant to Rule 54(b) is disfavored in this circuit. *Id.* at 1335. In certifying an appeal, the district court must determine "whether there is no just reason for the delay in the entry of judgment." *Id.* Although we have set forth factors a court should consider in making such determination, *id.* at 1335-36, the district court did not address any of those factors in its order. "The expression of clear and cogent findings of fact is crucial" for appellate review of the court's certification decision. *Id.* at 1336. While the district court found that an immediate appeal would expedite and simplify the complex issues in Kyle's case, that finding is not supported by the record.

Accordingly, we dismiss the appeal for lack of jurisdiction. *See Braswell,* 2 F.3d at 1335-36; *see also Curtiss-Wright Corp. v. Gen. Elec. Corp.,* 446 U.S. 1, 10, 100 S.Ct. 1460, 64 L.Ed.2d 1 (1980) (discussing standard of review). We deny Kyle's motions for appointment of counsel and for postponement of appeal. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

*DISMISSED.*

**Parallel Citations**

2003 WL 21246656 (C.A.4 (W.Va.))

2003 WL 21246656

\*  Although Kyle filed his notice of appeal before the district court certified the order under Rule 54(b), we have adopted the majority view in holding that "absent prejudice to the appellee, the district court's Rule 54(b) certification may follow the notice of appeal." *Harrison v. Edison Bros. Apparel Stores, Inc.*, 924 F.2d 530, 532 (4th Cir.1991).

**End of Document**       © 2014 Thomson Reuters. No claim to original U.S. Government Works.

2006 WL 3193624

205 Fed.Appx. 164
This case was not selected for
publication in the Federal Reporter.
Not for Publication in West's Federal Reporter.
See Fed. Rule of Appellate Procedure 32.1
generally governing citation of judicial decisions
issued on or after Jan. 1, 2007. See also Fourth
Circuit Rule 32.1 (Find CTA4 Rule 32.1)
United States Court of Appeals,
Fourth Circuit.

LaCrecia LEGG, as Administratrix of the
Estate of Mark Sutphin Hanna; Mark
Sutphin Hanna, Plaintiffs—Appellants,
v.

KLLM, INCORPORATED, a Texas corporation;
Gustavo Jimenez, d/b/a Southwest Freightlines,
a Texas corporation; Keith James Pierce, an
individual; Manuel Hernandez Medrano,
an individual, Defendants—Appellees.

No. 05–2403.    |    Submitted: Oct.
11, 2006.    |    Decided: Nov. 6, 2006.

**Synopsis**

**Background:** Estate of deceased hitchhiker brought wrongful death action against tractor-trailer driver and trucking company, stemming from rest area accident. The United States District Court for the Southern District of West Virginia, Robert C. Chambers, J., 2005 WL 3051016, dismissed action. Estate appealed partial judgment order.

**Holding:** The Court of Appeals held that court lacked appellate jurisdiction over order.

Appeal dismissed.

**\*164** Appeal from the United States District Court for the Southern District of West Virginia, at Charleston. Robert C. Chambers, District Judge. (CA–05–540).

**Attorneys and Law Firms**

Anne E. Shaffer, Charleston, West Virginia; Kimberly E. Williams, Whiteman Burdette, P.L.L.C., Charleston, West Virginia, for Appellants. Thomas V. Flaherty, Jaclyn A. Bryk, FLaherty, Sensabaugh & Bonasso, P.L.L.C., Charleston, West Virginia; Neva G. Lusk, Jill C. Bentz, Spilman, Thomas & Battle, P.L.L.C., Charleston, West Virginia, for Appellees.

Before NIEMEYER, WILLIAMS, and SHEDD, Circuit Judges.

**Opinion**

Dismissed by unpublished PER CURIAM opinion.

**\*165** Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

PER CURIAM:

**\*\*1** LaCrecia Legg, as personal representative of the estate of Mark Sutphin Hanna, appeals the district court's partial judgment order in favor of KLLM, Inc., and Keith James Pierce in this wrongful death action. The district court ordered that judgment should be entered without delay.[*] *See* Fed.R.Civ.P. 54(b). Although neither Legg, KLLM, nor Pierce has challenged the district court's apparent certification of this appeal under Rule 54(b), we must consider sua sponte the issue of whether the court's entry of final judgment was warranted because it involves the scope of our jurisdiction. *See Snowden v. CheckPoint Check Cashing,* 290 F.3d 631, 635 (4th Cir.2002) ( "[W]hen our appellate jurisdiction is in doubt, we must *sua sponte* raise and address the matter."). We dismiss the appeal for lack of jurisdiction.

Certification pursuant to Rule 54(b) is disfavored in this circuit. *Braswell Shipyards, Inc. v. Beazer East, Inc.,* 2 F.3d 1331, 1335 (4th Cir.1993). In certifying an appeal, the district court must determine "whether there is no just reason for the delay in the entry of judgment." *Id.* Although we have set forth factors a court should consider in making such determination, *id.* at 1335–36, the district court did not address any of those factors in its order. "The expression of clear and cogent findings of fact is crucial" for appellate review of the court's certification decision. *Id.* at 1336.

Because the district court did not set forth its rationale in ordering that judgment against KLLM and Pierce be entered without delay, we dismiss the appeal for lack of jurisdiction. *See id.* at 1335–36; *see also Curtiss–Wright Corp. v. Gen. Elec. Corp.,* 446 U.S. 1, 10, 100 S.Ct. 1460, 64 L.Ed.2d 1 (1980). We dispense with oral argument because the facts and legal contentions are adequately presented in the materials

before the court and argument would not aid the decisional process.

*DISMISSED.*

**Parallel Citations**

2006 WL 3193624 (C.A.4 (W.Va.))

Footnotes

\*      Legg's action against the remaining defendants has been stayed by the district court pending resolution of this appeal.

---

**End of Document**                                        © 2014 Thomson Reuters. No claim to original U.S. Government Works.

Lyles v. Popkin, 36 F.3d 1093 (1994)

1994 WL 525824

36 F.3d 1093
Unpublished Disposition
NOTICE: THIS IS AN UNPUBLISHED OPINION.
(The Court's decision is referenced in a "Table of
Decisions Without Reported Opinions" appearing
in the Federal Reporter. See CTA4 Rule 32.1.
United States Court of Appeals, Fourth Circuit.

Pamela LYLES; John Edmond, Plaintiffs-Appellants,
v.
Arnold POPKIN, Defendant-Appellee,
and UNITED STATES POSTAL SERVICE, General
Counsel; Dewey Sparks, Inspector, Individually
and as Postal Inspector; M. Sherwin Green,
Individually and as Postal Inspector; Thomas
Krautheim, Individually and as Postal Inspector;
Wendy Arnell, Individually and as U.S. Assistant
Attorney for the District of Maryland; Roger
Wolf, Individually and as Assistant Attorney
General of the State of Maryland; Richard Spitz,
Jr.; United States of America, Defendants.

No. 93-1910.    |    Submitted Aug.
30, 1994.    |    Decided Sept. 27, 1994.

Appeal from the United States District Court for the District
of Maryland, at Baltimore. M. J. Garbis, District Judge.
(CA-90-1181-MJG)

**Attorneys and Law Firms**

Pamela Lyles, John Edmond, appellants pro se.

Carol Ann Petren, Deborah Murrell Whelihan, Jordan, Coyne
& Savits, Washington, DC, for appellee.

D.Md.

DISMISSED.

Before HALL, MURNAGHAN, and WILLIAMS, Circuit
Judges.

## OPINION

PER CURIAM:

**\*1** Appellants appeal from a district court order dismissing
one Defendant (Popkin) from the now-stayed action in district
court. We dismiss the appeal for lack of jurisdiction.

After denying a motion for summary judgment that was based
on qualified immunity, [*] the district court continued to act in
the case with regard to non-federal defendants. The district
court dismissed Popkin for the Appellants' failure to comply
with discovery regarding him. The district court certified that
order for interlocutory appeal under Fed.R.Civ.P. 54(b).

Certification pursuant to Rule 54(b) is disfavored in this
Circuit. *Braswell Shipyards, Inc. v. Beazer East, Inc.,* 2
F.3d 1331, 1335 (4th Cir.1993). And, in certifying an appeal,
the district court must determine "whether there is no just
reason for the delay in the entry of judgment." *Id.* Though
this court has enumerated factors a district court should
consider and discuss in its determination, *id.* at 1335-36,
the district court failed to address any of those issues in
its order. Rather, it merely recited the language of Rule
54(b). This was insufficient to support certification. *Knafel v.
Pepsi Cola Bottlers Inc.,* 860 F.2d 1155, 1160 (6th Cir.1988).
And, although the district court considered that certification
would ease Plaintiffs' appellate burden, this consideration is
inappropriate. *Burlington N. R. Co. v. Bair,* 754 F.2d 799,
800 (8th Cir.1985).

Thus, while the district court attempted to certify the order
at issue, we find ourselves without jurisdiction to properly
consider the appeal. The certification was lacking in the
particulars required to properly bring the issue before the
court. We, therefore, dismiss the appeal on that basis. We
deny Popkin's motion for reconsideration of this court's
earlier order granting Appellants an extension of time to file
a supplemental brief. Because the brief has been filed, the
motion is moot. We also deny Popkin's motions to dismiss the
appeal based on the timeliness of Lyles's informal brief in this
court. We dispense with oral argument because the facts and
legal contentions are adequately presented in the materials
before the court and argument would not aid the decisional
process.

*DISMISSED.*

**Parallel Citations**

1994 WL 525824 (C.A.4 (Md.))

1994 WL 525824

Footnotes

\*        This order is the subject of another appeal currently pending before this Court, *Lyles v. United States Postal Serv.,* No. 93-1442.

---

**End of Document**                                    © 2014 Thomson Reuters. No claim to original U.S. Government Works.

2010 WL 679005
Only the Westlaw citation is currently available.

**This decision was reviewed by West editorial staff and not assigned editorial enhancements.**

United States District Court,
D. South Carolina,
Columbia Division.

Carlos Edward MARTIN and
Tashiana Anita Martin, Plaintiffs,
v.
Leon LOTT, as Representative for the Office
of the Richland County Sheriff's Department;
Deputies Ben Fields and Joseph Clark, in their
individual capacities as deputies with the Richland
County Sheriff's Department, Defendants.

C/A No. 3:07–3782–JFA.    |    Feb. 23, 2010.

**Attorneys and Law Firms**

Erika Vanessa Harrison, Turner Padget Graham and Laney, Charleston, SC, for Plaintiffs.

Robert David Garfield, William Henry Davidson, II, Davidson Morrison and Lindemann, Columbia, SC, for Defendants.

**ORDER DENYING RECONSIDERATION**

JOSEPH F. ANDERSON, JR., District Judge.

**\*1** This matter comes before the court on plaintiff Carlos Martin's ("Mr.Martin") motion [dkt. # 85] requesting the court to reconsider its order [dkt. # 78] granting defendant summary judgment, or, in the alternative, motion to certify the court's rulings as final pursuant to Rule 54(b). The court has reviewed Mr. Martin's motions, and, for the reasons that follow, the motions are denied.

Motions under Rule 59 are not to be made lightly: "[R]econsideration of a previous order is an extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." 12 James Wm. Moore et al., Moore's Federal Practice ¶ 59.30[4] (3d ed.)."Rule 59(e) permits a court to alter or amend a judgment, but it may not be used to relitigate old matters, or to raise arguments

or present evidence that could have been raised prior to the entry of judgment."*Exxon Shipping Co. v. Baker,* —— U.S. ——, 128 S.Ct. 2605, n. 5, 171 L.Ed.2d 570 (2008) (internal citation omitted)."Mere disagreement [with a court's ruling] does not support a Rule 59(e) motion."*U.S. ex rel. Becker v. Westinghouse Savannah River Co.,* 305 F.3d 284, 290 (4th Cir.2002) (internal citation omitted). The Fourth Circuit has held a motion to reconsider should be granted for only three reasons: (1) to follow an intervening change in controlling law; (2) on account of new evidence; or (3) to correct a clear error of law or prevent manifest injustice. *Hutchinson v. Staton,* 994 F.2d 1076, 1081 (4th Cir.1993). Plaintiff does not seek reconsideration on the basis of an intervening change in controlling law, or on account of new evidence, but requests reconsideration alleging clear error of law.

Mr. Martin's motion to reconsider seeks to relitigate matters previously decided by the court and appears to be based largely on his displeasure with the court's prior ruling. Accordingly, his motion for reconsideration must be denied.

Because the court denies Mr. Martin's claim for reconsideration, Mr. Martin moves for the entry of final judgment pursuant to Rule 54(b) as to the court's rulings on his 28 U.S.C. § 1983 claims, and his state-law claims of false imprisonment and false arrest. The court notes as an initial premise that "Rule 54(b) certification is recognized as the exception rather than the norm" and that the "chief purpose of Rule 54(b) is to prevent piecemeal appeals when multiple claims are resolved in the course of a single lawsuit."*Braswell Shipyards v. Beazer East, Inc.,* 2 F.3d 1331, 1335 (4th Cir.1993). Pursuant to *Curtis–Wright Corp. v. General Electric Co.,* 446 U.S. 1, 100 S.Ct. 1460, 64 L.Ed.2d 1 (1980), a district court must undertake a two step determination in considering a motion to certify. First, the district court must decide whether a judgment is final. Second, the district court must determine whether there is no just reason for delay. *Id.* at 8. In assessing whether is no just reason for delay, the court should consider (1) the relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court may have to revisit the issue a second time; (4) the presence or absence of a claim or counterclaim which could result in a set-off against the judgment sought to be made final; and (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of the trial, frivolity of competing claims, expense, and the like. *Id.*

**\*2** After reviewing the relevant factors, and in light of the Fourth Circuit's strong policy disfavoring piecemeal appeals, the court finds that Mr. Martin has not carried his burden to persuade the court that Rule 54(b) certification is appropriate.

Based on the foregoing, Mr. Martin's motion for reconsideration and his motion, in the alternative, to certify judgment as final are denied. Mr. Martin's state-law claim for battery remains for trial. Jury selection is scheduled for March 9, 2010.

IT IS SO ORDERED.

---

**End of Document**

© 2014 Thomson Reuters. No claim to original U.S. Government Works.

1999 WL 33217282
United States District Court, S.D. Florida.

Nancy STEVENS and Mark Stevens, Plaintiffs,
v.
DANEK MEDICAL, INC., et al., Defendants.

No. 95–14293–CIV–PAINE.  |  April 16, 1999.

**Attorneys and Law Firms**

Scott Dozier Sheftall, Richard C. Alvarez, Sheftall Alvarez &
Torres Miami, FL, for Plaintiffs.

Anthony Vale, Pepper, Hamilton & Scheetz LLP,
Philadelphia, PA, for Defendant Danker Medical.[1]

Patricia E. Lowry, Steel Hector & Davis LLP, West Palm
Beach, FL, for Defendant Danker Medical.1

*OMNIBUS ORDER*

PAINE, J.

**\*1** THIS CAUSE comes before the Court upon the
following motions: (1) Defendants' Motion for Final
Summary Judgment (D.E.64); (2) "Defendants' Motion to
Preclude Testimony of Harold Alexander, Ph.D ., and to
Strike Portions of His June 16, 1998, Report" (D.E.70);
(3) Plaintiffs' Motion to Reinstate Their Claim of "Fraud
on the Food and Drug Administration" (D.E.108); (4)
Defendants' Motion to Exclude Plaintiffs' "Expert" Witnesses
on Conspiracy and/or FDA Regulations (D.E.45); (5)
Defendants' Request for Oral Argument on Motion for Final
Summary Judgment (D.E.63); (6) four motions for extensions
of time by Plaintiffs (D.E.s 72, 75, 77 and 96); (7) a motion for
extension of time by Defendants (D.E.102); (8) motions for
leave to exceed page limitations by Plaintiffs and Defendants
(D .E.s 98 and 105); and (9) two motions regarding the
scheduling of various pretrial deadlines (D.E.s 21, 22).

For the reasons set forth below, partial summary judgment
will be granted; the disputes regarding the various experts'
testimony will be resolved only to the extent required for
summary judgment purposes; rulings on the other aspects of
those motions will be reserved until trial; the fraud on the
Food and Drug Administration ("FDA") claim will not be
reinstated; the remaining procedural motions will be disposed
of in summary fashion at the end of this Order; and the parties

will be required to submit an updated scheduling report and
proposed scheduling order in order to facilitate the scheduling
of trial and pre-trial deadlines.

***PROCEDURAL BACKGROUND***

On or about October 23, 1995, Plaintiffs Nancy Stevens
("Stevens") and Mark Stevens (collectively, "the plaintiffs"),
filed the instant ten-count complaint against, among others,
Defendants Danek Medical, Inc., Sofamor Danek Group,
Inc., Warsaw Orthopedic, and Sofamor, Inc. (collectively,
"the Danek defendants"). Thereafter, this and thousands of
other similar cases were consolidated by the Judicial Panel
on Multidistrict Litigation and transferred to the United
States District Court for the Eastern District of Pennsylvania
("MDL 1014" or the "MDL litigation") for resolution of
certain issues common to all claims. The Honorable Louis
C. Bechtle presided over the MDL litigation. Judge Bechtle
made several preliminary rulings and then remanded the cases
to the federal district courts in which they were originally
filed for determinations involving application of state law.
Currently, as outlined above, this Court addresses the parties'
various pending motions.

***FACTUAL BACKGROUND***[1]

The instant lawsuit concerns the marketing, promotion and
eventual application of the Danek defendants' TSRH Pedicle
Screw Fixation System ("the TSRH System"). The TSRH
System is an internal fixation device used to hold the spine
in place to increase the chances of a successful solid bony
fusion of the vertebrae. In the instant case, the TSRH
System was implanted in the lumbar pedicles of Stevens'
spine, an application not then approved by the Food and
Drug Administration ("FDA"). Stevens claims that (1) her
injuries were caused by the negligent design, manufacture
and inspection by the Danek defendants; (2) the defendants
acted negligently in failing to provide adequate warnings
to physicians and patients; and (3) the TSRH System was
fraudulently marketed and promoted to surgeons across the
country, by advertising the system as suitable for use in
pedicles (posterior portions of the spine) and opposed to the
FDA approved uses in the sacrum, ilium and anterior portions
of the spine.

**Marketing of the TSRH System**

 **\*2** According to the plaintiffs, the Danek defendants
planned to market the TSRH System for pedicular use,
even as they were representing to the FDA that the

TSRH System would only be marketed for use in the sacrum, ilium and anterior portions of the spine. Indeed, the FDA's approval of the TSRH System was conditioned on two restrictions: (1) that the device not be labeled or promoted for pedicular attachment to, or fixation of, the spine; and (2) that all labeling for the device prominently state that the device is intended for sacral-iliac attachment only and include the statement: "WARNING —THIS DEVICE *HAS NOT BEEN APPROVED* FOR PEDICULAR APPLICATION" (emphasis in original). The plaintiffs further assert that notwithstanding this directive, the Danek defendants failed to include the required warning in the TSRH System labels.

Furthermore, the plaintiffs allege that the Danek defendants engaged in an elaborate marketing campaign to promote the use of the TSRH System as the "standard of care" for pedicular bone fusion surgery. This alleged campaign apparently included seminars at which physicians were introduced to the TSRH System. The plaintiffs further claim that these marketing efforts were among the ways in which Stevens' treating physicians learned of the TSRH System and its pedicular application.

**Stevens' Use of the TSRH System**

It is undisputed that Stevens' history of back problems significantly predates her use of the TSRH System. In 1976, Stevens was diagnosed with scoliosis. *Deposition of Nancy Stevens,* pp. 71, 74. As a result of that diagnosis, Stevens underwent back surgery to place a metal rod down the length of her spine. [2] *Id* . at 73–74.For the following sixteen years, Stevens apparently suffered constant but tolerable pain. *Id.* at 78.

On April 26, 1992, Stevens was working her regular job at the concessions stand at the Ft. Pierce jai-alai fronton when her back "gave out," causing her "excruciating" pain. *Id.* at 23–25.This pain continued unabated until September 1992, when she decided to undergo treatment to relieve the pain.*Id.* at 88, 99.

On September 3, 1992, Stevens visited Dr. Michael MacMillan, a board certified orthopedic surgeon, who was on the faculty of the University of Florida Department of Orthopedics in Gainesville, Florida. *Deposition of Michael MacMillan, M.D.,* p. 7. During this initial visit, Stevens was diagnosed with spondylolisthesis at the L5–S1 level of her spine, spondylosis, and a non-union between the

L3–L4 vertebrae. [3] Based on this diagnosis, Dr. MacMillan recommended that Stevens undergo a surgical procedure to (1) remove the existing rod; (2) fuse her vertebrae; and (3) stabilize her spine using orthopedic bone screws from the TSRH System. *Id.* at 19–20.

Although Dr. MacMillan informed Stevens of the general risks of surgery, apparently he never informed her of the risks and consequences of her use of the TSRH System. *Stevens Depo.,* pp. 96, 99. Nor was she informed that the FDA disapproved the labeling and marketing of TSRH System for pedicle implantation. *Id.* at 97.Indeed, MacMillan testified that he, himself, was unaware of such FDA disapproval. *MacMillan Depo.,* p. 29.

**\*3** On September 28, 1992, Dr. McMillan surgically implanted the TSRH System bone screws into Stevens' lower spine. *September 28, 1992, Operative Report.*In the months following the implantation surgery, Stevens' experienced some degree of relief from her back pain. *Stevens Depo.,* pp. 104–05. However, in June 1993, approximately eight months after the implantation surgery, Stevens' pain returned. *Stevens' Depo.,* pp. 110–11. An x-ray showed that one of the screws inserted into Stevens' S1 pedicle had fractured. *July 6, 1993, Office Notes.*

Thereafter, on August 23, 1993, Stevens underwent a second surgery involving the TSRH System. *Request for Hospital Services and Physicians' Orders;August 23, 1993, Operative Report.*During the second surgery, Dr. MacMillan replaced the broken screw and once again attempted to fuse portions to Stevens' spine.*Id.* [4] In the months following this surgery, Stevens continued to suffer "sharp" back pain. *Stevens' Depo.,* p. 121–22. In this period, she was referred to Dr. Jeffrey Fernyhough for continued care. *See*April 19, 1994, Letter from Dr. Fernyhough to Dr. Sullivan.

Upon examining Stevens, Dr. Fernyhough found that her lumbar flexion and extension had decreased considerably since her implantation surgery. *Id.* Dr. Fernyhough's diagnostic studies also indicated that a lower cross link of the TSRH System was loose and that a lock nut from a cross link was missing. *Id.* Dr. Fernyhough further found evidence of yet another failed fusion at various levels of Stevens' spine. *Id.* As a result, he recommended surgery to correct these failures. *Id.*

On July 18, 1994, Stevens underwent explantation of the original TSRH System; implantation of a new TSRH System;

WestlawNext © 2014 Thomson Reuters. No claim to original U.S. Government Works.

1999 WL 33217282, 14 Fla. L. Weekly Fed. D 138

and refusion of her L5–S1 vertebrae. *July 18, 1994, Operative Report.*Although Stevens' pain improved for a few months after this surgery, ultimately, it returned "with great force." *Stevens Depo.,* p. 136.

Over at least three successive visits, Dr. Fernyhough found that one of the S1 screws had broached the outer cortex of Stevens' pedicle (*February 9, 1995, Office Notes* ), and that Stevens' pain was probably hardware related. *See*July 17, 1996, Office Notes;*June 7, 1996, Office Notes.*Upon making such diagnosis, Dr. Fernyhough recommended another surgery to explant the TSRH System. *Id.*

On August 7, 1996, Stevens underwent a fourth surgery, to explant the TSRH System. In his surgery notes, Dr. Fernyhough observed that the fusion attempted in Steven's third surgery had occurred at all levels. *July 7, 1996, Operative Report.*Thereafter, Dr. Fernyhough reevaluated these observations and noted that fusion had, in fact, not been successful at all levels. *May 20, 1997, Letter from Dr. Fernyhough to Dr. Sullivan.*Stevens asserts that she continues to suffer severe back and leg pain. *Stevens Depo.,* pp. 59–60, 140, 142, 145. Her husband and co-plaintiff, Mark Stevens, asserts that before undergoing the four TSRH System surgeries Stevens "could sit ... and have her children on her lap. She could pick them up and give them a hug. She could walk across the room without being bent over. She could walk for a little bit ... Without being uncomfortable and having to sit down to take a break because she is in so much pain."*August 22, 1997, Deposition of Mark Stevens,* p. 25.

## DISCUSSION

### I. Motion for Summary Judgment [5]

#### A. Standard of Review

**\*4** In deciding a summary judgment motion, a court must apply the standard stated in *Fed.R.Civ.P.* 56(c):

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

In applying this standard, the Eleventh Circuit has stated that:

> The party seeking summary judgment bears the exacting burden of demonstrating that there is no genuine dispute as to any material fact in the case. In assessing whether the movant has met this burden, the courts should view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion. All reasonable doubts about the facts should be resolved in favor of the non-movant.

*Clemons v. Dougherty County, Ga.,* 684 F.2d 1365, 1368–69 (11th Cir.1982) (citations omitted); *see also*Tisdale v. United States, 62 F.3d 1367, 1370 (11th Cir.1995). Moreover, "the party opposing the motion for summary judgment bears the burden of responding *only after* the moving party has met its burden of coming forward with proof of the absence of any genuine issues of material fact."*Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

The United States Supreme Court has provided significant additional guidance as to the evidentiary standard which trial courts should apply in ruling on a motion for summary judgment:

> [The summary judgment] standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict. *Brady v. Southern R. Co.,* 320 U.S. 476, 479–480 (1943).

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). The Court in *Anderson* further stated that "[t]he mere existence of a scintilla of evidence in support of the position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]."*Id.* at 252.

### B. Fraudulent Marketing/Promotion—Count IV

The Danek defendants seek summary judgment as to this count on two grounds. First, they assert that Florida does not recognize a claim for fraudulent marketing. Second, they argue that, even if the cause of action were recognized, it must

Stevens v. Danek Medical, Inc., Not Reported in F.Supp.2d (1999)

1999 WL 33217282, 14 Fla. L. Weekly Fed. D 138

fail because Stevens failed to demonstrate that she relied upon a misrepresentation.

### 1. The Claim is Recognized Under Florida Law

Florida law provides a private cause of action for fraudulent advertising and marketing. Fla. Stat. §§ 817.40(5), 817.41(1).[6] Moreover, at least one Florida court has held that a plaintiff need not specify that the claim arises under these statutes when pleading it. *Vance v. Indian River Hammock Hunt & Riding Club, Ltd.,* 403 So.2d 1367, 1369 (Fla. 4 th DCA 1981). Therefore, as to the Danek defendants' first argument, the motion for summary judgment will be denied. Accordingly, the Court will now address the Danek Defendants' second issue.

### 2. Reliance upon a Misrepresentation

**\*5** In order to recover for fraud, Florida law requires Stevens to prove, among other things, that she reasonably relied on a misrepresentation by the Danek defendants. *SeeKramer v. Unitas,* 831 F.2d 994, 998 (11 th Cir.1987). The Danek defendants assert that they are entitled to summary judgment on this issue because Stevens is unable to show that her decisions to undergo surgery were influenced by representations made by any Danek defendant. The defendants are correct in that it is undisputed that Stevens testified that she never (1) spoke to a representative of one of the Danek defendants, or (2) read or even saw anything from the Danek defendants. *Stevens Depo.,* pp. 132– 33. Never-the-less, the defendants' argument fails because in Florida, generally, a patient can maintain an action in fraud against a manufacturer when that manufacture makes a misrepresentation to her physician. *Albertson v. Richardson– Merrell, Inc.,* 441 So.2d 1146 (Fla. 4 th DCA 1983).

In the instant case, based on the express limitations on the FDA's approval of the TSRH System and the Danek defendants' apparent promotion of that System for an unapproved use as the "standard of care," a reasonable jury could find that the defendants' alleged failure to disclose the express limitations on FDA approval was a misrepresentation by omission. Therefore, Stevens has met her burden of raising a triable issue of fact as to alleged false representations made to and relied upon by Drs. MacMillan and Fernyhough.[7] Accordingly, as to Count IV, the motion for summary judgment must be denied.

### C. Negligent Misrepresentation Under Restatement (Second) of Torts § 402B—Count V

Although the plaintiffs acknowledge that no Florida court has ever adopted Restatement (Second) of Torts § 402B, they never-the-less, urge this Court to apply it in this case. The Court declines to do so.

Under *Erie R.R. Co. v. Tompkins,* 304 U.S. 64 (1938), a federal court sitting in diversity must apply the substantive law of the forum state. *Id.* at 78.The Supreme Court has further held that in a diversity case, a federal district court is " not free to engraft onto those state rules exceptions or modifications which may commend themselves to the federal court, but which have not commended themselves to the State in which the federal court sits."*Day & Zimmerman, Inc. v. Challoner,* 423 U.S. 3, 4 (1975).

In accordance with these principles, this Court will not permit the plaintiffs to assign liability on a theory never before recognized under Florida law. Therefore, as to Count V, the motion for summary judgment will be granted.

### D. Products Liability Claims—Counts VI, VII and VIII

### 1. Count VII—Liability Per Se

In Count VII, the plaintiffs attempt to assert a cause of action for liability per se based on the Danek defendants' alleged violation of the Food Drug and Cosmetics Act ("FDCA"), 21 U.S.C. § 301. Private claims asserting FDCA violations are expressly prohibited by the FDCA itself. 21 U.S.C. § 337(a); *Medtronic, Inc. v. Lohr,* 518 U.S. 470, 487 (1996) ("[T]here is no explicit private cause of action against manufacturers contained in the [Medical Device Amendments to the FDCA], and no suggestion that the Act created an implied right of action."). Moreover, Florida courts have refused to recognize a private right of action for negligence per se based on an alleged violation of a federal statute that does not provide for a private right of action. *SeeJupiter Inlet Corp. v. Brocard,* 546 So.2d 1, 2–3 (Fla. 4 th DCA 1998) (OSHA does not provide a basis for a private right of action and violations do not constitute negligence per se).

**\*6** In *Murthy v. N. Sinha Corp.,* 644 So.2d 983, 985 (Fla.1994), the Florida Supreme Court held that a court should look to the legislative intent of a statute to determine whether a claim for negligence per se should lie. Because the statute in *Murthy* displayed " no evidence in the language or the legislative history of a legislative intent to create a private

1999 WL 33217282, 14 Fla. L. Weekly Fed. D 138

remedy," the Florida Supreme Court affirmed the dismissal of the plaintiff's negligence per se claim. *Id.* at 986–87. *Murthy* is the authoritative Florida statement of negligence per se and, therefore, because the FDCA expressly precludes a private right of action, the motion for summary judgement will be granted as to Count VII.

### 2. Counts VI (strict Liability) and VIII (Negligence)

The motion for summary judgment raises similar issues with respect to these two counts. Specifically, the Danek defendants contend that they are entitled to summary judgment as to both of these counts because the plaintiffs have not proffered competent evidence of (1) a defect in the TSRH System or (2) that such an alleged defect caused the injuries of which Stevens complains. Therefore, in the interests of clarity and brevity, the Court will address Counts VI and VIII simultaneously.

### a. Defect

The plaintiffs assert that the Danek System has three types of defects: (1) defective design; (2) defective manufacture and inspection; and (3) a failure to provide adequate warnings. The Danek defendants contend that they are entitled to summary judgment as to each of these claims because the plaintiffs failed to offer competent evidence of any such defects. [8]

Upon an extensive review of the record and the law, the Court finds that the plaintiffs have adduced sufficient evidence to preclude summary judgment on the issue of alleged defects in the TSRH System. Through the testimony of various experts, [9] the plaintiffs have adduced evidence to the effect that the TSRH System "Contains design defects," that the system was " not adequately tested," that " no tests supported the use and efficacy of pedicle screw fixation systems," and that tests found the opposite to be true—that the system "provided absolutely no benefit to patients."The plaintiffs have also raised triable issues with regard to the adequacy of the warnings on the TSRH System. Therefore, as to this issue, the motion for summary judgment must be denied. Accordingly, the Court now turns to the issue of causation.

### b. Causation

The Danek defendants assert that the plaintiffs have failed to offer competent evidence that the alleged defects in the TSRH System caused the injuries of which Stevens complains. The Court disagrees.

According to the plaintiffs' causation expert, Dr. Jack Moshein, [10] the TSRH System "has create a lot of problems for [Stevens]. Mostly back pain and the irritation of her right S1 nerve root, it would appear from the broken screw."*August 21, 1998 Deposition of Jack Moshein, M.D.,* pp. 44–45. "That necessitated another operation." *Moshein Depo.,* p. 43. Indeed, even Stevens' implanting physicians, Drs. MacMillan and Fernyhough, acknowledged the TSRH System's malfunction and Stevens' ensuing pain. See*MacMillan Depo.,* pp. 98–99; *July 19, 1993, Letter from Dr. MacMillan;August 18, 1993, Office Note;July 18, 1994, Operative Report.*Accordingly, the Court finds that the plaintiffs have raised a material question of fact as to the issue of causation. Therefore, the motion for summary judgment must be denied as to Counts VI and VIII.

### E. Loss of Consortium—Count X

**\*7** The Danek defendants' only grounds for summary judgment on this claim is that all of the other claims have failed. [11] However. this Court declined to enter summary judgment on at least one of the plaintiffs' other claims. Therefore, summary judgment cannot be entered on those grounds. Accordingly, the motion will be denied as to Count X.

### II Motion to Reinstate Count I—Fraud on the FDA

The plaintiffs seek to reinstate a fraud on the FDA claim that alleges, in essence, that the Danek defendants submitted fraudulent information to the FDA that enabled them to obtain clearance for marketing of the TSRH System for use in the sacrum, ilium and anterior portions of the spine. In the MDL litigation, Judge Bechtle dismissed this claim as preempted by the FDCA. See PTO Nos. 12 and 84.

This dismissal was not appealed. However, Judge Bechtle's dismissal of a similar claim against Buckman Company, another defendant, (PTO No. 900) was appealed to and reversed by the Third Circuit Court of Appeals. *SeeIn re: Bone Screw Products Liability Litigation,* 159 F.3d 817 (3 [rd] Cir.1998) ( *"Buckman"* ). In *Buckman,* the Third Circuit held that the FDCA did not preempt states from allowing claims of fraud on the FDA. *Id.* at 823–26.

Currently, the plaintiffs assert that in light of *Buckman,* the Court must reinstate their fraud on the FDA claim. The Court

Stevens v. Danek Medical, Inc., Not Reported in F.Supp.2d (1999)

1999 WL 33217282, 14 Fla. L. Weekly Fed. D 138

declines to do so because *Buckman* is not the law of the case and is contrary to binding Eleventh Circuit precedent.

## A. Law of the Case

The plaintiffs assert that *Buckman* is binding on this Court as the law of the case. In support of this argument they cite to many cases that provide that in MDL cases, such as this one, rulings by the appellate court embracing the transferee district constitute controlling authority with respect to each case that has been transferred or consolidated for coordinated pretrial proceedings pursuant to 28 U.S.C. § 1407. *SeeIn re: TMJ Implants Products Liability Litigation,* 97 F.3d 1050, 1055 (8 th Cir.1996); *In re: Food Lion, Inc. Fair Labor Standards Act "Effective Scheduling" Litigation,* 73 F.3d 528, 532–33 (4 th Cir.1996); *FMC Corp. v. Glouster Engineering Co.,* 830 F.2d 770, 771–7 (7 th Cir.1987). However, those cases may be distinguished from the instant case for two reasons. First, unlike those cases, this case involves a decision made following remand. Once remand has taken place, any MDL jurisdiction that might have supported law of the case no longer exists. *SeeIn re: Upjohn Co. Antibiotic "Cleocin" Products Liability Litigation,* 508 F.Supp. 1020, 1021 (E.D.Mich.1981); *Manual for Complex Litigation (3d)* § 31.133, at 255 (1995).

Second, and more fundamentally, the Danek defendants were not parties to the *Buckman* appeal. Law of the case does not apply to non-parties who have not had their day in court. 4A Wright & Miller, *Federal Practice & Procedure,* § 4478, at 832 (Supp.1998); *seeIn re: DG Acquisition Corp.,* 151 F.3d 75, 86 (2 nd Cir.1998) ("[W]here there has been no review even though appeal has been taken, it is equivalent to the party not having had an opportunity to appeal, and prevents the challenged decision from becoming law of the case").

 **\*8** The Danek defendants appeared only as amicus curiae in *Buckman.See*159 F.3d at 821 n. 3."[T]he filing of an amicus brief has never been enough to bind a non-party to the result of a proceeding."*Munoz v. County of Imperial,* 667 F.2d 811, 816 (9 th Cir.1982). Therefore, *Buckman* is not law of the case.

## B. Binding Eleventh Circuit Precedent

The Eleventh Circuit Court of Appeals recently stated that allegations attacking the submissions upon which federal administrative decisions are made as "fraudulent" are preempted because those claims inherently conflict with whatever agency action they seek to invalidate. *SeeLewis v. Brunswick Corp.,* 107 F .3d 1494 (11 th Cir.1997), *cert. dismissed,*118 S.Ct. 1793 (1998). In *Lewis,* the court held that "fundamental systemic reasons" barred a claim that the defendant had fraudulently misled the Coast Guard about the safety of boat propeller guards:

> Regulatory fraud claims of this nature are impliedly preempted for fundamental, systemic reasons. Permitting such claims would allow juries to second-guess federal agency regulators through the guise of punishing those whose actions are deemed to have interfered with the proper functioning of the regulatory process. If that were permitted, federal regulatory decisions that Congress intended to be dispositive would merely be the first round of decision making, with later more important rounds to be played out in the various state courts. Virtually any federal agency decision that stood in the way of a lawsuit could be challenged indirectly by a claim that the industry involved had misrepresented the relevant data or had otherwise managed to skew the regulatory result.... Congress could not have intended for the process it so carefully put in place to be so easily and thoroughly undermined.

*Lewis,* 107 F.3d at 1505 (footnote omitted).

The Concerns expressed in *Lewis* are the same as those raised by the instant fraud on the FDA claim. Moreover, *Lewis* is not the only Eleventh Circuit authority on point. In *Papas v. Upjohn Co.,* 985 F.2d 516 (11 th Cir.1993), the Eleventh Circuit held that allegations of fraud committed against the Environmental Protection Agency were preempted. *Papas,* 985 F.2d at 518–19.Other courts of appeals that have considered whether agency-fraud claims are preempted agree with *Lewis* and *Papas,* including the Fifth Circuit, which examined the issue in the connection with this *Bone Screw* litigation. In *Reeves v. AcroMed Corp.,* 44 F .3d 300 (5 th Cir.), *cert. denied,*515 U.S. 1104 (1995), the court recognized

fraud on the FDA as a "collateral attack on the FDA's original determination" that was preempted because such claims would permit "states to impose conflicting requirements on medical device manufacturers." *Reeves,* 44 F.3d at 307 (citation omitted). *Accord Mitchell v. Collagen Corp.,* 126 F.3d 902, 914 (7 th Cir.) (fraud on the FDA claim preempted), *cert. denied,* 118 S.Ct. 1300 (1998). Therefore, under binding Eleventh Circuit law, the plaintiffs' claim of fraud on the FDA is preempted. Accordingly, the plaintiffs' motion to reinstate their claim of fraud on the FDA will be denied.

### CONCLUSION

**\*9** In light of the foregoing, it is hereby

ORDERED AND ADJUDGED as follows:

1. Defendants' Motion for Final Summary Judgment (D.E.64) is GRANTED IN PART. The motion is granted to the extent that SUMMARY JUDGMENT IS ENTERED in favor of the defendants as to Counts II, III, V, VII and IX. The motion is denied in all other respects.

2. Defendants' Request for Oral Argument on Motion for Final Summary Judgment (D.E.63) is DENIED as moot;

3. Defendants' Motion to Preclude Testimony of Harold Alexander, Ph.D., and to Strike Portions of His June 16, 1998, Report (D.E.70) is GRANTED IN PART, in accordance with footnote 10, *supra,* resolution of the remaining portions of that motion is deferred until trial;

4. Plaintiffs' Motion to Reinstate Their Claim of "Fraud on the Food and Drug Administration" (D.E.108) is DENIED;

5. Defendants' Motion to Exclude Plaintiffs' "Expert" Witnesses on Conspiracy and/or FDA Regulations (D.E.45) is deferred until trial.

6. The Plaintiffs' four motions for extensions of time (D.E.s 72, 75, 77 and 96) are GRANTED *nunc pro tunc;*

7. The Defendants' motion for extension of time (D.E.102) is GRANTED *nunc pro tunc;*

8. The Parties' motions for leave to exceed page limitations (D.E .s 98 and 105) are GRANTED;

9. Plaintiff's Motion for Expedited Discovery Track (D.E.21) is DENIED as moot;

10. The Parties' Joint Motion for Agreed Scheduling Order (D.E.22) is DENIED as moot; and

11. Within twenty (20) days of the date of this Order the parties SHALL file an updated scheduling report and proposed scheduling order.

**Parallel Citations**

14 Fla. L. Weekly Fed. D 138

Footnotes

1    There were many more defendants and attorneys in this case who are not listed here because they were not involved in this particular motion.

1    As will be discussed further in Section I.A. of this Order, *infra,* what are considered "the facts at this stage may not turn out to be the actual facts if the case goes to trial, but these are the facts for summary judgment purposes." *Cottrell v. Caldwell,* 85 F.3d 1480, 1486 (11 th Cir.1996).

2    Neither that surgery nor the implanted rod is a subject of this lawsuit.

3    Spondylolisthesis is a forward displacement of one vertebra over another. *Dorland's Illustrated Medical Dictionary,* 24 th Ed.

     Spondylosis is a degenerative condition of the spine. *Dorland's Illustrated Medical Dictionary,* 24 th Ed.

     A non-union is a false joint resulting from a failed fusion. *Dorland's illustrated Medical Dictionary,* 24 th Ed.

4    The fusion attempted with the first surgery had proven unsuccessful. *Id.*

5    In their response to the motion for summary judgment, the plaintiffs concede that summary judgment is appropriate with respect to Count II (Civil Conspiracy), Count III (Concert of Action), and Count IX (Breach of Warranty). Therefore, as to these counts, the motion for summary judgment will be granted without further discussion.

6    The statutes were enacted as parts of the same act and are intended to be read together. *Major v. State,* 180 So.2d 335 (Fla.1965).

7    With regard to the issue of reliance, the Danek defendants assert that the two physicians' advice to Stevens regarding the implantation of the TSRH System based on their medical knowledge and experience rather than the result of their attendance at a seminar or group of seminars. However, in the MDL proceedings, Judge Bechtle had occasion to consider the relevance of such assertions. Judge Bechtle ruled that "[t]he fact that a surgeon attended a seminar, learned techniques for pedicle screw fixation at the seminar and later performed pedicle screw fixation utilizing those techniques is a basis upon which a jury could find that a particular implanting surgeon relied upon information provided at or through those seminars in making the determination to implant bone screws in the pedicles of the patient's spine."*In re: Orthopedic Bone Screw Products Liability Litigation,* MDL Docket No. 1014 (E.D.Pa. Aug. 13, 1998) (PTO No. 1543). This Court agrees with Judge Bechtle's assessment. Accordingly, the issue of reliance upon alleged misrepresentations is one that must be resolved by a jury.

8    The Danek Defendants further assert that, as to the alleged failure to warn, they are also insulated from liability because of the "learned intermediary" doctrine. However, when, as alleged here, a manufacturer withholds negative information about its product and a physician relies on the manufacturer's literature in forming an opinion about the product's risks, then the manufacturer must meet a heightened evidentiary standard in order to show that the physician was "an intermediary sufficiently informed to interrupt the causal link of liability between the manufacturer and the plaintiff."*Zanzuri v. G.D. Scarle & Co.,* 748 F.Supp. 1511, 1518 (S.D.Fla.1990).

In the instant case, the plaintiffs make sufficient allegations that the Danek defendants misled the medical community, including Stevens' physicians, regarding the risks associated with the TSRH System. Therefore, there is a jury question on the issue of whether or not the Danek defendants should be insulated from liability on the basis of the "learned intermediary" doctrine.*Seealso* the discussion contained in foot note 7, *supra.*

9    The plaintiffs have submitted expert testimony on the issue of defects from Drs. Kimmel, Welford and Alexander. The Danek defendants have filed motions to preclude at least some testimony from these experts as well as that of Frank Sloan, Ph.D. and David Helfry, Esq. To the extent that the motions seek to exclude these experts for being disclosed in an untimely fashion, the motions are denied. As to the other issues raised in the motions, the Court reserves judgment until the time of trial.

10    The plaintiffs also proffer the opinions of Dr. Alexander in support of their causation arguments. However, Judge Bechtle addressed Dr. Alexander's qualifications as an expert in Order No. 725 in the MDL litigation, and ruled that Dr. Alexander was qualified to testify only with regard to "the field of orthopedic bioengineering (biomechanics, biomaterials, biomedical engineering, and design and analysis of device research)."*In re: Orthopedic Bone Screw Products Liability Litigation,* MDL Docket No. 1014 (E.D.Pa. Jan. 21, 1997) (PTO No. 725). Therefore, in accordance with that ruling, this Court declines to rely on Dr. Alexander's opinions regarding causation.

11    It is undisputed that Count X, for loss of consortium, is a derivative claim. *SeeGates v. Foley,* 247 So.2d 40, 45 (Fla.1971).

---

**End of Document**                                                      © 2014 Thomson Reuters. No claim to original U.S. Government Works.